**RECONSTRUCTION FINANCE CORP. v. UNITED DISTILLERS PRODUCTS CORP.**

Civ. A. No. 2338.

United States District Court
D. Connecticut.

April 30, 1952.

On the Merits July 25, 1952.

Harry Bergson, Boston, Mass., for plaintiff.

Samuel Rosenthal, Hartford, Conn., for defendant.

HINCKS, Chief Judge.

This is an action for breach of contract brought by the Reconstruction Finance Corp. (hereinafter called "R.F.C."), as successor in interest of the Defense Supplies Corporation (hereinafter called "D.S.C."), the buyer under the contracts in question, against the United Distillers Products Corp. (hereinafter called "Distillers"), a New Jersey corporation. The matter is now before the court on plaintiff's motion for summary judgment.

D.S.C. was an agency of the government which entered into the contracts now in suit as a means to acquire for wartime purposes ethyl alcohol, then a strategic material, from the defendant which had a plant for its production in Amston, Connecticut. The contracts were four in number, all in writing. The first, dated December 28, 1942, was in effect during the first quarter of 1943; the second, dated March 31, 1943, controlled the relations of the parties during the balance of 1943; a third was substituted on January 1, 1944 and this remained in effect until July 1, 1944 when the final contract was executed. Although the third and fourth contracts are entitled variously "Amendment" and "Amendatory Agreement", they appear each to embody

all the provisions which are relevant to the decision of this case so they may most conveniently be treated as separate contracts.

The first contract provided that the purchase price was "not to exceed the maximum price for the Processor's alcohol * * * as determined in accordance with Office of Price Administration procedure under the O.P.A. General Maximum Price Regulations," etc. The successive contracts each contained a provision that "the purchase price shall be the maximum price for the Distiller's alcohol established or determined in accordance with the appropriate regulation of the Office of Price Administration," etc.

The appropriate Maximum Price Regulation provided that the price should be determined on the basis of a formula depending on actual costs of raw materials, direct labor, other conversion costs, plant overhead, and general administrative expense not in excess of 3¢ per gallon: plus a profit to the distiller of 4¢ per gallon above the costs thus computed. And the regulation set forth a procedure whereby the price for each quarter should be determined on the basis of actual production costs as thereafter ascertained. Each contract also contained a provision that in event of a revision by O.P.A. of defendant's ceiling price the purchase price was to be adjusted accordingly.

On October 25, 1946, O.P.A. issued a series of amendatory price orders purporting to change the ceiling prices of alcohol theretofore sold to D.S.C. by the defendant for the entire period covered by said four contracts, except for the third quarter of 1945. And on the basis of these amendatory orders of O.P.A. the plaintiff by this action seeks to recover of the defendant so much of the consideration previously paid by D.S.C. as exceeded the price determined on the basis of these amendatory orders, this excess amounting to $82,215.27.

The plaintiff's present right to recover must necessarily depend upon the proper interpretation of these contracts. The plaintiff contends that the plain meaning of the contracts is such that the purchase price should be the defendant's ceiling price as fixed by O.P.A. And the defendant contends that the contracts should be interpreted to mean that the parties shall be bound only by a purchase price which is actually in accordance with the formula of the O.P.A. Regulations, referred to above. The defendant's contention as to the construction of the contract is basic to its further claim that the prices as set in the O.P.A. orders of October 25, 1946 are without binding effect because not in conformity with the stipulated formula. The dispute as to the proper interpretation of the contracts lies at the heart of the controversy and to this problem I now turn.

 Are the contracts here involved ambiguous? As to this, the interpretation for which the defendant contends certainly is not plainly required from the face of the writings. And I incline to the view that neither is the plaintiff's interpretation so required. If as to this latter conclusion there be any doubt, the benefit thereof for all purposes of this memorandum I give to the defendant and treat the writings as ambiguous. Cf. Boro Hall Corp. v. General Motors Corp., 2 Cir., 1947, 164 F.2d 770. I thus take the case as a proper one for application of the doctrine that "when the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one." Brooklyn Public Library v. City of New York, 1929, 250 N.Y. 495, 166 N.E. 179, 181.

### Did Contracts Contemplate Price-Fixing Orders Which Were Retroactive?

In support of its position as to the point of interpretation the defendant points to the undisputed fact that the O.P.A. orders of October 26, 1946, on which plaintiff now counts, as to the transactions involved were retroactive and argues that the contracts should not be so interpreted as to make the final purchase price depend upon a retroactive order. And if I understand the defendant's position aright, it argues further that, even if the price might be fixed by orders having some, "reason-

476

able", retroactive effect, the contracts may not be so interpreted as to give price-determinative effect to the orders of October, 1946, the issuance of which was so long deferred after the final shipment under the contracts as to be "unreasonably" retroactive.

This interpretation, however, is in direct conflict with express language contained in the contracts. The price terms, and other relevant sections, of the contracts are set forth in an accompanying footnote.[1] The first and second contracts, it will be observed, expressly mention retroactive price changes. And none of the contracts expressly negatives the possibility of retroactive price changes. And all the contracts expressly set as the limiting factor the maximum price as determined under the O.P.A. regulations. All of the O.P.A. orders to Distillers were issued under Maximum Price Regulation 28, issued originally on September 15, 1941, 6 F.R. 4761; 32 C.F.R., 1941 Supp. 3265-7, Secs. 1335.-150-1335.159. The defendant has quoted parts of Regulation 28 in an appendix to its first affidavit and there is no dispute as to the fact that this is the regulation which the parties had in mind in executing the various contracts. On September 17, 1942, prior to the execution of the first contract, Appendix A to Regulation 28 was amended by the addition of new subparagraphs (e), (f) and (g). 7 F.R. 7401. These subparagraphs, which are set out in part in an accompanying footnote, were intended to establish a special formula to be used in computing the ceiling price for ethyl alcohol sold to the United States. The formula embodied in these subparagraphs, as amended, is the one actually used by the O.P.A. in computing Distillers' ceiling prices on the alcohol which was sold under the contracts here. Subparagraphs (e), (f) and (g) were later amended and consolidated into new subparagraph (h) of Appendix A. 8 F.R. 2339. Subparagraph (h) was in turn modified by subsequent amendments to the Regulation, but throughout the period of price regulation the basic content of the Regulations remained the same in all important respects as in the original amendment issued on September 17, 1942.

The regulation contemplated that a distiller's ceiling price should be established initially by the distiller itself through the medium of a report of its costs to be filed with the O.P.A. for each quarter in which alcohol was sold to the United States. (It will be noted that the Regulations contemplated that the ceiling price for each manufacturer should be individually fixed in accordance with his costs). Prices so reported were "subject to disapproval *at any time* by the Office of Price Administration." (Emphasis supplied.) This right to disapprove prices as reported by Distillers "at any time" by O.P.A. shows clearly that the parties in entering into the contracts envisaged the possibility of retroactive changes in alcohol prices. The O.P.A. did in fact, prior to October 25, 1946, issue price orders disapproving the ceiling prices reported by Distillers for each of the quarterly periods which subsequently were covered by the later orders of October 25, 1946. The validity and effectiveness of these pre-October 25, 1946, orders is not contested by the defendant. All of them were issued at times which, in relation to the period of the sales to which they were intended to apply, necessarily made the orders operate retroactively as to some or all of the sales during each of these periods.

■ Hence, it appears that, not only at the times that the various contracts were executed, did the O.P.A. regulations contemplate retroactive price-fixing but also that the defendant's prices were in fact subjected to retroactive changes under each of these contracts even before the issuance of the orders now in question. By providing in each contract that prices should thus be determined, therefore, the parties necessarily must have intended that such retroactive determinations should be effective.

■ The defendant points out also that the third and fourth contracts provided that they were to be subject to the provisions of the Renegotiation Act of 1942, as

1. Footnotes appended to original memorandum are not here reproduced.

amended, Public Law 528 of April 28, 1942, c. 247, Title IV, Sec. 403, 56 Stat. 245, 50 U.S.C.A.Appendix, § 1191, whereas the first and second contracts did not so provide. It contends that by inserting such a provision in the later contracts the parties must have intended to do away with any possibility of retroactive changes by the O.P.A. and to substitute instead the procedures set out in the Renegotiation Act. However, D.S.C. did not become subject to the provisions of the Renegotiation Act until on or after July 1, 1943. Cf. Public Law 108 of July 1, 1943, c. 185, 57 Stat. 347–8 *with* Public Law 528 of April 28, 1942, cited supra, and Public Law 753 of October 21, 1942, c. 619, Title VIII, Sec. 801(a), 56 Stat. 982. Only the third and fourth of the contracts between the parties were executed after July 1, 1943. The O.P.A. regulations continued to provide for retroactive price changes by the Price Administrator at the time that those contracts were executed and the two later contracts, like the earlier ones, state that the purchase price was to be "the maximum price for distiller's alcohol determined in accordance with appropriate regulations of the Office of Price Administration." Hence, it seems entirely clear that the parties did not intend to limit the effect of O.P.A. price determinations by inserting the provisions as to the Renegotiation Act into the later contracts, but rather that these provisions were intended to give D.S.C. a separate and additional remedy under the contracts, as required by Congress.

■ The defendant stresses the use of the phrase "during the operative period of the agreement" in the first paragraph of Sec. 2 of the first contract. It contends that this phrase was used because the parties intended that only those O.P.A. orders which were issued "during the operative period of the contract" should affect the contract price. However, it appears more reasonable to find that the parties intended by this phrase merely to indicate that the contract price should be determined by the ceiling price established for the operative period of the contract rather than for some other period. That this is in fact the proper interpretation becomes altogether clear when the first paragraph is read in the context of the balance of Sec. 2 and the relevant sections of Maximum Price Regulation 28.

### Did Contracts Contemplate Price-Fixing Orders Issued as Late as October, 1946?

*As to the lapse of time between the date of final performance and the orders of October 1946,* it is true that the orders were issued from 15 to 24 months after final performance. As of October 25, 1946 there were outstanding O.P.A. orders to the defendant establishing a ceiling price for alcohol sold to D.S.C. by defendant during each of the periods which were covered by the amendatory orders of October 25. These prior orders had been issued from six to forty-three months before October 25, 1946. This time lapse is the basis for the defendant's contention that under the circumstances the October 25, 1946 orders operated "unreasonably" retroactively, and that under any proper interpretation of the contracts the parties could not have intended to leave their liabilities open to revision by orders issued at that time.

On analysis, however, the inference of such intent is not required by any language in the contracts. With the possible exception of the first contract, which contains the phrase "during the operative period of the agreement" discussed previously, the contracts are completely barren of anything which could be construed as a limitation on the period during which prices were to be subject to revision by the O.P.A. As already noted, Maximum Price Regulation 28, under which defendants' ceiling prices were to be set, provided that ceiling prices established by distillers were to be subject to disapproval "at any time."

■ Neither do the contracts or the regulation provide any basis from which it might be inferred that the O.P.A. power to fix the contract prices was to be limited to any specified period of time. The first contract was for a period of the first three months of 1943. The other contracts were for an indefinite period, with an option to D.S.C. to terminate on 10 days' notice. Actually, however, the second and third

contracts were replaced at the end of a quarterly period, as was the first contract. The termination date of the fourth contract is not available from the material here. Maximum Price Regulation 28 provided for the fixing of ceiling prices on a quarterly basis. As I noted previously, the ceiling price was to be determined initially by the filing of a report of costs by the distiller. This report was not required until twenty days after the termination of the period to which the price was to apply. (For the first period in which it sold alcohol to D.S.C. the defendant was required, under Regulation 28, to submit a report of estimated costs within twenty days after the first sale. However, it was also required to submit the report of actual costs within twenty days after the end of the period.) The Price Administrator necessarily would not make his own final determination as to the ceiling price until after such a report was filed. Hence, it appears that the parties clearly could not have contemplated that the contract price for any quarterly period would be finally determined within that period. And neither the contract nor the Regulation contains any suggestion that the power of O.P.A. in the premises was subject to any limitation in point of time as to any of the contracts each of which covered one or more quarterly periods.

▪ The defendant suggests that I should find that the parties to the contract must have intended that whenever the O.P.A. first issued a price order covering a quarterly period, that order would constitute a final and conclusive determination of the contract price for such period. However, the facts do not support the finding of such an intent: indeed, they militate strongly against any such finding. In the first place, Regulation 28 apparently allows the Price Administrator an opportunity to issue any number of price orders for each period. Secondly, if the parties had intended that the first order for each period should be final and conclusive they would have thereby deprived themselves of all opportunity to object to the order if they thought it unfair or inconsistent with the Regulation. I cannot bring myself to believe that the defendant would ever have agreed to such a limitation. Under the Price Control Act and the O.P.A. regulations any person "subject to" an O.P.A. order might either file a formal protest directed to it or request the Price Administrator to reconsider it on an informal basis. Public Law 421 of January 30, 1942, c. 26, Sec. 203, 56 Stat. 31, 50 U.S.C.Appendix, § 923; O.P.A. Procedural Regulation No. 1, 7 F.R. 971–5. If the Administrator denied such a protest, the aggrieved party might then file a complaint in the Emergency Court of Appeals and ask that the order be set aside. Public Law 421 of January 30, 1942, c. 26, Sec. 204(a), 56 Stat. 31, 50 U.S.C.A.Appendix, § 924(a). The defendant made use of all these possible remedies. On October 25, 1946 it was awaiting action on its request for informal consideration of Order L–156 covering the second quarter of 1945. Earlier it had filed a protest of Order 36, covering the second quarter of 1944, and, after the Price Administrator had refused to reconsider his adverse decision on the protest, it filed a complaint in the Emergency Court of Appeals. United Distillers Products Corp. v. Bowles, Em.App.1945, 148 F.2d 345. Thus its actual conduct was inconsistent with the contention now made that the initial determination was to be final and binding.

▪ Under the circumstances I believe that perhaps the most fruitful clue to proper interpretation of the contracts is furnished by the facts as to the nature of the contracts and the relations of the parties. Although the defendant was an established firm, D.S.C. was not. It was incorporated in 1940 to act as a medium through which the federal government might acquire strategic materials needed for the national defense effort. Public Law 664 of June 25, 1940, c. 427, Sec. 5, 54 Stat. 573, 15 U.S.C.A. § 606b; 6 F.R. 2972, 13 C.F.R.1941 Supp. p. 1566. It was later dissolved effective July 1, 1945 by Act of Congress. Public Law 109 of June 30, 1945, c. 215, 59 Stat. 310, 15 U.S.C.A. § 611 note. The contracts were presumably made in aid of the national war effort. Cf. R. F. C. v. Foust Distilling Co., D.C.M.D.Pa., 103 F.

Supp. 167, memo. op. by Murphy, J. The parties therefore, in entering into these contracts, must have contemplated that their relations would be at least approximately co-extensive with the duration of the national emergency.

■ In providing that prices under the contracts should be established according to the appropriate regulations of the O.P.A., the parties gave further indication of an intention that their relations should be limited to the period of the national emergency, since the O.P.A. was another of the agencies of the government created for purposes of the war effort. Public Law 421 of January 30, 1942, c. 26, Sec. 1, 56 Stat. 23, 50 U.S.C.Appendix, § 901. It is, therefore, reasonable to conclude that by the contracts the parties intended that the contract prices should not be finally determinable until the effective end of O.P.A. control of the defendant's prices.

Such a view of the contracts necessarily demands that they be treated as covering a single transaction or series of transactions since it glosses over any distinctions which might be drawn between the various contracts or the various periods of price control. The facts tend to indicate that that is precisely how the parties treated the situation. The contracts themselves seem to be the same in all important respects. There is nothing in the material submitted in connection with this motion which suggests that there were ever any important variations in the details of the business arrangements between the parties.

■ Compelling support for this conclusion as to the parties' intent is furnished by the Price Control Act itself. The act draws no distinction between sales to private persons and sales to the United States. 50 U.S.C.Appendix, § 902(a). Ethyl alcohol had been made subject to price control as early as September 15, 1941. 6 F.R. 4761. Hence, in entering into these contracts, the parties must have realized that they were dealing in a commodity which was subject to price control and that if the defendant accepted an amount greater than the applicable ceiling price in payment for its alcohol it would be violating the Price Control Act. Cf.

R. F. C. v. Foust Distilling Co., memo. op. by Murphy, J., cited supra. Where possible, a contract should be construed to obviate the possibility that performance under it will result in a violation of law.

■ Moreover, in appraising defendant's present contention that the orders of October 25, 1946 were ineffective to fix the purchase price because they were so long deferred, it must be remembered that the O.P.A. Regulation concededly applicable involved an analysis and verification of a complicated problem of cost accounting which well might involve time-consuming field investigations. Sherwood Distilling Co. v. Ryan, Em.App.1951, 190 F.2d 314. Thus from the beginning the parties must have envisaged the possibility that considerable time would be required for final settlement of the price. Moreover, the defendant itself, by letter appended to its affidavit, had requested informal reconsideration of Order L–156 which related to the second quarter of 1945, and expressly requested that O.P.A. review and compare the relevant accounting figures for that quarter with earlier periods. It is reasonable to infer from the correspondence attached to the affidavit that this letter of the defendant led to studies and investigations by O.P.A. which culminated in the orders of October 25, 1946. Indeed, these orders recite on their face that they were issued "pursuant to information gathered by this office (i. e., O.P.A.) in an investigation of your request for informal reconsideration of Order L–156." By thus inviting a time-consuming study and reconsideration of the cost accounting for that prior period in the hope of a price modification *upward,* the defendant evidenced an understanding that a favorable order would be timely and effective under the contract. It thus stands in poor position for its contention that when *a downward* modification resulted in the orders issued on October 25, 1946, the orders were ineffective because the parties in entering into the contract did not envisage price orders so "unreasonably" deferred.

Taking into account the situation of the parties and all the surrounding circumstances as they existed in 1942 and 1943,

and the conduct of the parties thereafter under the contracts, the defendant's present contention of an original contractual intention that the contract price was to be immune from price-fixing orders issued as late as October 25, 1946,—that is to say, that orders then issued were so "unreasonably" deferred as to be ineffective—is unsupported and must be overruled.

### Did the Contracts Contemplate that Price-Fixing Orders to Be Effective Must Be Reasonable?

Except for the second quarter of 1945, the amendatory orders of October 25, 1946 had the effect of reducing the ceiling prices set by previous price orders. And the defendant asserts that, even without taking into account the effect of the amendatory orders, it suffered loss under the contracts. Many of the cost items reported by the defendant in computing its ceiling prices were regularly disallowed in whole or part by the O.P.A. Defendant contends that these facts establish that the prices set under the amendatory orders of October 25, 1946 were "unreasonable" and it suggests that for that reason the orders were ineffective to change the contract prices in existence prior to their issuance, since it must be assumed that the parties intended to give effect only to "reasonable" O.P.A. price determinations not involving actual hardship.

On analysis, this contention appears to be identical in effect with that which I ruled on previously in granting the plaintiff's motion to dismiss the defendant's counterclaim in this action. In my memorandum of June 20, 1949, I stated that the price provisions in the contracts "make it plain that the intent was that the price should depend not upon the application of a fixed formula involving fixed and ascertainable quantities but rather upon a conclusion of the official price-fixing authority based, to be sure, upon general rules expressed in regulations subject to amendment but, notwithstanding, involving in large measure the exercise of discretion and judgment faculties. The general rules, including as they did broad generic factors of manufacturing costs, etc., were not sufficiently definite to constitute an objective standard to which a court might give direct application. The only element in the price sufficiently definite for enforcement was the O.P.A. determination. Altogether it is plain that the parties intended that the price should depend upon that determination." And, I should now add, any contention that the official determination is unreasonable is immaterial on the point of interpretation as long as the determination stands as the official ceiling.

### Did the Contracts Contemplate that the Determination of the Price Was Dependent upon Official Notice of the Issuance of Price-Fixing Orders to the Defendant?

The O.P.A. orders of October 25, 1946 are in the form of letters directed to the defendant. Each stated that a copy thereof had been deposited with the Secretary of the Office of Price Administration. There is nothing in the record which shows that copies of these letters were actually mailed to the defendant. However, the defendant has admitted, in its answer to the complaint, that the plaintiff has made demand on it for the amounts which the plaintiff claims are now due as a result of the orders.

It is the defendant's position that in executing the various contracts between them, it and D.S.C. intended that O.P.A.'s orders to it would be effective to change the contract prices only after it had received "proper" notice of these orders. It contends that the basis for "proper" notice is established in one or another of the following: (i) O.P.A. Procedural Regulation No. 1, 7 F.R. 971–975, issued originally, on February 12, 1942; (ii) Sec. 5(a) of the Federal Register Act, Public Law 220 of July 26, 1935, c. 417, Sec. 5(a), 49 Stat. 501, 44 U.S.C.A. § 305(a); and (iii) Sec. 3(b) of the Administrative Procedure Act, Public Law 404 of June 11, 1946, c. 324, Sec. 3(b), 60 Stat. 238, 5 U.S.C.A. § 1002 (b). However, it is plain enough that neither the section of the O.P.A. regulation nor the two statutes cited by the defendants were intended to apply to orders of the type of those of October 25, 1946.

Sec. 1300.51 of O.P.A. Procedural Regulation No. 1, on which the defendant

relies, provided: "Service of Papers. Notices, orders and other processes and papers may be served personally or by leaving a copy thereof at the principal office or place of business of the person to be served, or by registered mail or by telegraph * *." 7 F.R. 975. The section clearly does mention "orders", but when the section is read in the context of the balance of the regulation it becomes apparent that the "orders" referred to are not price orders. The regulation deals with a number of aspects of administrative procedure within the agency. It provides, in particular, a procedure to be followed by the Price Administrator in hearing protests of price orders or regulations. Where such a hearing is requested the regulation requires the issuance of an order or notice setting the hearing date. Cf. Secs. 1300.19 and 1300.23 of O.P.A. Procedural Regulation No. 1, 7 F.R. 971–975. It is this type of order, rather than a price order, which is referred to in Sec. 1300.51.

■■■ Sec. 5(a) of the Federal Register Act required publication in the Federal Register of "such documents or classes of documents as the President shall determine from time to time have general applicability and legal effect". Sec. 5(a) of Public Law 220 of July 26, 1935, cited supra. I assume that it is to this requirement that the defendant refers. The orders of October 25, 1946 show on their face that they were directed only to the defendant. They were therefore hardly orders of "general applicability", and hence not required to be published in the Federal Register. Secs. 1300.1(d) and 1300.7 of O.P.A. Procedural Regulation No. 1, 7 F.R. 971–975; cf. Public Law 279 of April 1, 1944, Title I, Sec. 1, 58 Stat. 151, 44 U.S.C.A. § 305 note, which amended the Federal Register Act as to "*community* ceiling price orders and schedules". (Emphasis added.)

■■■ Finally, Sec. 3(b) of the Administrative Procedure Act provided: "Opinions and Orders.—Every agency shall publish or, in accordance with published rule, make available to public inspection all final opinions or orders in the adjudication of cases (except those required for good cause to be held confidential and not cited as precedents) and all rules." Sec. 3(b) of Public Law 404 of June 11, 1946, cited supra. It is stated in the orders of October 25, 1946 that copies thereof had been filed with the Secretary of the Office of Price Administration where they were "open to inspection by the public." The defendant does not deny this. However, whether this constituted compliance with the Act or not, it appears that this section of the Administrative Procedure Act also was not intended to apply to orders of this type. The orders were not "orders in the adjudication of cases" so far as appears from the material submitted here; no "case" within the meaning of this Act existed when the orders of October 25, 1946 were issued. Instead of being orders "in the adjudication of cases", these were orders which, as is recited on their face, were issued "pursuant to information gathered by this Office in an investigation of your (Distillers') request for informal reconsideration of Order L–156." Neither were the orders of October 25 "rules" within the meaning of the Act. Rules, as defined in Sec. 2 of the Act, are agency statements of "future effect designed to implement, interpret, or prescribe law or policy". Sec. 2(c) of Public Law 404 of June 11, 1946, cited supra. In the case of the orders here, the "law" or "policy" in question had already been prescribed in Maximum Price Regulation 28. The orders were effective merely to apply that law or policy to an individual distiller subject to the regulation. And neither were these orders of "future effect."

■■■ The defendant has not cited any other regulations or statutes which it claims relate to the contracting parties' intent in regard to notice. And I hold that, as a matter of administrative law, no *specific* sort of notice was required in order to give validity to the orders of October 25, 1946. Cf. Secs. 1300.1(d) and 1300.7 of O.P.A. Procedural Regulation No. 1, 7 F.R. 971–975. Doubtless, it was the intent of the parties that before an action would lie on the contracts each party should have such timely notice of an effective price-fixing order as would give it reasonable opportunity to invoke the procedure of

482

administrative review and of appeal to the Emergency Court of Appeals, as provided in the Act and regulations. I so interpret the contracts. But there is no basis in the law or the facts for defendant's contention that the contracts should be interpreted to mean that the price ceiling, referred to therein as constituting the purchase price, was subject to change only upon some particular form of notice to the defendant manufacturer of the amendatory order.

Having examined every argument raised by the defendant on the interpretation of the contracts, I conclude that they must be interpreted to mean that orders such as those issued by O.P.A. on October 25, 1946 should be effective to fix the contract price.

### Special Defenses

With the contract interpreted as above indicated, there remain for consideration several grounds of defense alleged in the defendant's answer and brief. These I will not discuss briefly, *seriatim*.

█ The defendant, in its answer has denied R.F.C.'s allegation in its complaint that all of D.S.C.'s assets and liabilities have been transferred to it by Act of Congress. But this allegation receives express support in the provisions of Public Law 109 of June 30, 1945, 59 Stat. 310, and the defendant has failed to state any facts or contentions whatsoever which would support its denial. In the face of this statute the defendant's denial may be disregarded.

█ In the "Sixth Defense" in its "Amendment to Answer" the defendant alleged that the orders in question are "patently void, illegal and unenforceable" because: (a) of lack of "proper" notice thereof to the defendant, and (b) "said orders attempt by arbitrary and unreasonable means to establish maximum prices retroactively, and conflict with the regulations and the provisions of the contract described in the Complaint." Apparently the defendant has now decided to abandon this defense. However that may be, the defense is plainly not available to it in this action on the contracts. Under Sec. 204(d) of the Emergency Prior Control Act of 1942 "exclusive jurisdiction to determine the validity of any regulation or order"

issued under the Act is vested in the Emergency Court of Appeals. Public Law 421 of Jan. 30, 1942, c. 26, Sec. 204(d), 56 Stat. 32, 50 U.S.C.A.Appendix, § 924(d). Section 204(d) was intended to apply in an action such as this as well as in enforcement proceedings under the Act. Woods v. Stone, 1948, 333 U.S. 472, 68 S.Ct. 624, 92 L.Ed. 815; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892; Lockerty v. Phillips, 1943, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Tambasco v. Reconstruction Finance Corp., 2 Cir., 1949, 178 F.2d 283; Reconstruction Finance Corp. v. Foust Distilling Co., Memo. op. by Murphy, J., cited supra; see also R. F. C. v. Foust Distilling Co., D.C.M.D.Pa.1949, 87 F.Supp. 632; Cf. Sec. 204(e) of The Price Control Act of 1942, as amended by Public Law 383 of June 30, 1944, Title I, Sec. 107, 58 Stat. 639, 50 U.S.C.A.Appendix, § 924(e).

In the "Fifth Defense" of its "Amendment to Answer" the defendant alleged that *the price terms of the contracts* between it and D.S.C. were "void, illegal and unenforceable", because (a) "such terms and conditions are patently ambiguous, contradictory and incomplete, and contain omissions which cannot be explained by admissible evidence," (b) "such terms and conditions contravene Secs. 202 and 205 of the Emergency Price Control Act of 1942", and (c) "the O.P.A. has neglected and failed to establish prices for said contract of sale and sales of alcohol at prices lower than the prices charged and received by the defendant." I find no indication in the papers filed in support of this motion that the defendant has any present intention of pressing these contentions. However, in the interests of insuring a final decision in the case at this time, I will deal with them.

█ "Fifth Defense" (a). Under New York law, which is applicable to this point, for a contract to be unenforceable because of vagueness the "indefiniteness must reach the point where construction becomes futile." Heyman Cohen & Sons, Inc., v. M. Lurie Woolen Co., Inc., 1921, 232 N.Y. 112, 133 N.E. 370, 371. Here, the contracts provided that the price was to

be equal to defendant's ceiling prices computed according to the appropriate regulations of the O.P.A. and it is agreed that the appropriate regulations are there embodied in Maximum Price Regulation 28. Regulation 28 sets forth a general standard for computing prices and the defendant has conceded the validity of a series of O.P.A. orders, issued prior to October 25, 1946, setting its ceiling price under this regulation. Thus by practical construction the parties have demonstrated that the contract has sufficient definiteness to have effect. However that may be, the contracts incorporate by reference a regulation which provides a reasonably definite standard for computing alcohol prices and this is all that the law requires. Heyman Cohen & Sons, Inc., v. M. Lurie Woolen Co., Inc., supra; see also Kerber Straw Hat Corp. v. Fredric Lincoln, 266 N.Y. 410, 195 N.E. 130, and Boret v. L. Vogelstein & Co., Inc., 230 N.Y. 573, 130 N.E. 898.

■ Nor is it valid to say that the contracts are void for vagueness because they fail to provide any limitation as to the time in which the price was to be finally determined. By analogy to generally accepted principles of contract law, it will be assumed that the parties intended to limit the period to a "reasonable" time. Eppens, Smith & Wiemann Co. v. Littlejohn, 1900, 164 N.Y. 187, 58 N.E. 19, 52 L.R.A. 811. And I have already ruled that these orders were not ineffective because unreasonably deferred.

■ "Fifth Defense" (b). I must also overrule the contention that the contracts are invalid in that they contravene Sections 202 and 205 of the Price Control Act, 50 U.S.C.A.Appendix, §§ 922, 925. Section 202 of the Act empowered the Price Administrator to conduct such investigations as he deemed necessary in connection with his powers to fix price and punish violators. Section 205 is the enforcement section of the Act. In citing these sections the defendant apparently intended to rely particularly on Sec. 205(e) which empowered the Price Administrator to bring an action to recover amounts charged by sellers in excess of the applicable ceiling prices. However, this is an action in con-

tract: there is nothing in the Act which suggests a Congressional intent to deprive a party of a right to enforce his contract. The defendant's position here is essentially that taken also in its "Third Defense" in its "Amendment to Answer" which must also be overruled on similar grounds. Lambur v. Yates, 8 Cir., 1945, 148 F.2d 137 and Joseph Denunzio Fruit Co. v. Crane, D.C.S.D.Cal.1948, 79 F.Supp. 117, motion for new trial granted, D.C., 89 F.Supp 962, reversed 9 Cir., 188 F.2d 569, certiorari denied 342 U.S. 820, 72 S.Ct. 37, 96 L.Ed. 620.

■ "Fifth Defense" (c). By the amendatory orders of October 25, 1946 the O.P.A. in fact set ceiling prices for the defendant's alcohol lower than those charged and received by the defendant. The existence of these orders has now been established beyond possibility of dispute by the certified copies thereof filed in support of the motion by the plaintiff. This branch of the Fifth Defense is therefore also overruled as completely lacking in merit.

■ In its "Amendment to Answer" the defendant raised as a defense the statute of limitations in Sec. 205(e) of the Price Control Act. Apparently this defense is no longer pressed. In any event, it rests on the same misconception of the nature of the action which I noted in treating others of the defendant's arguments mentioned earlier in this memorandum. The present action is one in contract: the plaintiff does not rely on Sec. 205(e) of the Price Control Act. The statute of limitations prescribed in that section is therefore inapplicable.

■ The defendant asserts that R.F.C., or its predecessor D.S.C., was guilty of laches because it acquiesced in the maximum prices established for defendant's alcohol under the O.P.A. price orders issued prior to October 25, 1946 and failed to file any protest as to them with the Price Administrator. But in this, the defendant overlooks the plain fact that under the regulations a downward revision of the defendant's ceiling might have been initiated either by the O.P.A. on its own initiative, or by one of the parties to the contracts

through the medium of a protest or a request for reconsideration. The defendant in effect asks that R.F.C. be deprived of the benefit of any price changes not initiated by itself or D.S.C. No basis whatever is shown for such an arbitrary request.

■ Equally groundless is the defendant's claim that R.F.C. is estopped to assert the remedy to which it is plainly entitled under the contracts. There is no assertion that the defendant changed its position to its detriment in reliance upon anything that either R.F.C. or D.S.C. did or failed to do. And there is no room for an inference of any such change of position.

■ Nor can I sustain the "Ninth Defense" which is based upon the claim that the orders were invalid because of the alleged unconstitutionality of the Supplemental Appropriation Act of 1948, 61 Stat. 619, and Sections 203(a) and 204(e) of the Price Control Act of 1942, as amended. Since the plaintiff's right of action does not in any way depend on either of these sections of the Price Control Act the unconstitutionality of neither section could possibly constitute a good defense to this action. Nor is there any basis for an attack on the constitutionality of the Supplemental Appropriation Act of 1948. If that Act in fact had the effect of depriving the defendant of its opportunity to file a protest to the orders of October 25, 1946, the defendant's proper remedy would be to raise this issue through a complaint in the Emergency Court of Appeals after the denial of its protest. If, on the other hand, this Act did not in fact have that effect, the defendant has no standing to assail its constitutionality. The impact of this Act on the issues here is a subject which I will discuss in a later section of the memorandum.

■ Lastly, the defendant again asserts its contention that this action is barred by reason of the plaintiff's failure to take steps to submit the controversy to arbitration in accordance with the arbitration clause in the contracts. This position was first asserted by the defendant in its motion to dismiss of May 25, 1950, which I disposed of adversely to the defendant in my memorandum and order of October 21, 1951 from which the defendant took an appeal which is still pending. I still adhere to the views and holdings expressed in that memorandum.

And so to consolidate the ground thus far traversed, I hold that none of the defenses interposed have been sustained. It only remains to consider whether the plaintiff is now entitled to summary judgment pursuant to its motion.

## Summary Judgment

■ Such a motion may be granted, of course, only if on the record made upon the plaintiff's motion, which in this case comprises the pleadings, the defendant's answers to plaintiff's requests for admissions and the affidavits of the parties, there is no genuine issue of fact within the meaning of Rule 56, Fed.Rules Civ.Proc. 28 U.S.C.A., material to the plaintiff's right to judgment. I turn first to a scrutiny of the defendant's affidavits filed in opposition to the motion.

These affidavits, two in number, were signed by the defendant's president, N. Tully Semel. These contain little, if anything, which complies with the requirements of Rule 56(e) which provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Jameson v. Jameson, 1949, 85 U.S.App.D.C. 176, 176 F.2d 58; U. S. v. Britten, 3 Cir., 1947, 161 F.2d 921; cf. Banco de Espana v. Federal Reserve Bank of New York, 2 Cir., 1940, 114 F.2d 438. However, the Court of Appeals for this Circuit has cautioned district judges to use great caution in granting summary judgments. Doehler Metal Furniture Co., Inc., v. U. S., 2 Cir., 1945, 149 F.2d 130. I therefore turn to scan the affidavits and indeed the entire record with eye alert to observe the appellate admonition.

■ Thus approaching the task, I find nothing in the affidavits which in my judgment could be held to constitute, within the meaning of Rule 56, personal knowledge of facts *admissible in evidence* which serve

to create any issue of fact. They are replete with assertions, with argument of law and with conclusions, derived from undisclosed bases, which would be wholly inadmissible if offered in evidence on trial. They do, it is true, contain a few allegations of fact which if offered in evidence would be admissible, but none create any issue of fact: all such allegations are undisputed and for all purposes of this memorandum I take them as true and give them full effect. It is true that they contain many assertions that "the parties intended" and "the parties contemplated" so and so. I fully recognize that the intent of the parties is material to the point of construction. But I cannot agree that any issue of fact is raised by the conclusionary allegations in the defendant's affidavits as to the intent of the parties in entering into the contracts. Such testimony from the affiant if offered on trial would be inadmissible. Certainly it is not admissible for one party to a contract to testify directly as to the intent, or other state of mind, of the other party. Nor is it even admissible for one party later to testify on trial as to his own earlier, unexpressed, intent in entering into the contract. Smith v. David B. Crockett Co., 85 Conn. 282, 288, 85 A. 569, 39 L.R.A.,N.S., 1148. It is true that on the issue of intent a party may testify *to his prior expressions* of intent made in the course of negotiating the contract. Gray v. Greenblatt, 113 Conn. 535, 155 A. 707; Mazzotta v. Bornstein, 104 Conn. 430, 439, 133 A. 677; Straus v. Kazemekas, 100 Conn. 581, 595, 124 A. 234. But no such allegations of prior expression of intent by either party to the contract are contained in the affidavits. I hold, therefore, that the conclusionary allegations of intent in defendant's affidavits may be disregarded since not in compliance with Rule 56(e).

Such a disposition can scarcely be deemed harsh in view of the history of the pending motion. When it was first submitted, by my preliminary memorandum of October 22, 1951 made after the parties had been fully heard on the pending motion without reservation to enlarge the record, I ruled that the plaintiff should submit the full text of the four contracts, which had not then been done, and noted that "a difficult problem of construction will remain with which I should be reluctant to cope unless assured that all relevant material which is available is in the record." I then ruled that to provide such material both parties should have opportunity to file further affidavits. Both parties availed themselves of this opportunity and thereby gave me assurance that the record as now supplemented contains assertion of all *facts* having any claimed or possible bearing on the interpretation of the contracts.

 It is the task of the judge to rule upon the point of interpretation, basing his ruling upon a preliminary finding of the facts which may affect that ruling. I assume that a summary judgment would not be permissible on a record which showed any dispute even as to the facts relevant to that preliminary finding. But here every assertion of fact which the parties properly make by affidavit (in contradistinction from conclusionary assertions of intent which the affiant may not properly assert either by affidavit or by testimony on trial) stands undisputed. And so, just as the judge in Smith v. David B. Crockett Co., supra, could himself construe the contract there involved and properly direct a plaintiff's verdict, so here under Rule 56 I may properly construe the contracts and having done so proceed to make rulings on the point of interpretation and on all the other legal issues raised.

 I have accordingly ruled in an earlier section of this memorandum that the contracts must be interpreted to mean that before a maximum price fixed by O.P.A. should have a binding effect in determining the final purchase price under the contracts, the defendant should have reasonable opportunity to protest and appeal the price fixing order under the administrative procedure provided by O.P.A. Regulations substantially as it existed when the contract was made. That the defendant has had such opportunity is thus an essential element of the plaintiff's case. And as to this element I find that there is an open issue of fact. The issue is raised by the answer which in Paragraph 6 asserts that the defendant "has no knowledge of the issuance of orders by the Office of

486

Price Administration on October 11, 1946 or on October 25, 1946." One cannot infer for present purposes that the defendant had opportunity to protest and appeal unless beyond dispute the defendant had knowledge of the issuance of the orders in time to protest and appeal. And the time for such protest and appeal was cut short by the Supplemental Appropriation Act of 1948, approved July 30, 1947, 61 Stat. 619, which provided that protests which initiate the review procedure "may not be filed more than one hundred and twenty days after issuance of such regulation, order, or price schedule or sixty days after the enactment of this amendment, whichever is the later."

It is true that on the issue thus raised the orders of October 1946 which are in the record show on their face that they were filed in the office of the Administrator contemporaneously with their signing. But I find nothing in the law or regulations whereby such a filing serves to charge a party with notice or knowledge. The record also shows that the defendant received correspondence from O.P.A. advising it that amendatory price orders were in process. But especially since the record shows that in prior dealings between O.P.A. and the defendant there had been long-time intervals between notice of an impending order and the actual issuance of the order I am unable to treat the correspondence which preceded the orders of October 1946 as fixing the date when the defendant received actual notice of those orders. The orders themselves are in the form of letters addressed to the defendant, but there is nothing in the record which showed that the letters were mailed, or received by the defendant or, if so, when. There is an admitted allegation in the complaint that prior "demand" had been made on the defendant. This imports at most that the plaintiff gave the defendant notice of the orders at some time prior to May 10, 1948 when the complaint was filed,— possibly only a day or two before that date. For aught that appears such notice may not have been given until it was too late for the defendant to protest and appeal within the time limited by the Supplemental Appropriation Act. Thus I am unable to find that the record shows beyond dispute that the defendant had reasonable opportunity to exercise its contractual right to protest and appeal.

It follows that the motion may not be now granted in its full sweep. However, I hold that except for the issue just discussed the record would support judgment for the full amount sought, $82,184.11, and therefore direct, agreeable to Rule 56(d), that the trial shall be limited to that single, open issue, viz., whether or not the defendant had actual or constructive knowledge of the issuance of the price-fixing orders of October 25, 1946, at such time as would have afforded it reasonable opportunity to protest and appeal under the O.P.A. Regulations existing or envisaged when the contracts were made. The plaintiff may claim the case for trial on this issue when desired.

But from this it does not follow that the plaintiff is entitled to no judgment at all on the present record. Partial relief is presently available if acceptable to the plaintiff as a final judgment. This is so because in paragraph 14 of its first affidavit the defendant sets forth certain O.P.A. price orders to it. In paragraph 15 of the same affidavit, referring to these orders, it states: "These were the prices set by O.P.A. orders to which adjustments were required by them to be made." There is neither claim, nor room for claim, that the defendant did not know of these orders in time to seek administrative review thereof.

The plaintiff has set out in its second affidavit a summary of account showing the amounts of alcohol delivered by the defendant and the money received in payment therefor. Nothing in the record disputes the accuracy of those figures. In the case of the third and fourth quarters of 1944 and the first two quarters of 1945, the plaintiff, in its statement of account, makes reference to certain O.P.A. orders issued prior to October 25, 1946. These orders appear to be identical, as to order number and ceiling price, with the orders set forth in paragraph 14 of the defendant's first affidavit. The plaintiff in its

affidavit states that the defendant has not refunded the amounts made due under these prior orders, as to whose identity, validity and effect, it and the defendant apparently are in entire agreement. These amounts are as follows: third quarter, 1944—$5,155.53; fourth quarter, 1944—$5,398.66; first quarter, 1945—$5,334.40; second quarter, 1945—$25,579.30; or a total of $41,467.89. As to this, there is no dispute whatever in the record. The plaintiff's right to judgment in the amount of $41,467.89, with interest at six per cent from the date of the complaint, is dependent upon no open issue of fact and is fully supported by the record made upon the pending motion.

It is accordingly ordered that the pending motion be denied and that the case may be claimed for trial upon the single issue defined above; provided, however, that the plaintiff, in lieu of claiming the case for trial, may elect to file an amendment to its complaint limiting the recovery sought to $41,467.89 with interest, in which event judgment for the plaintiff in that amount may be entered forthwith.

## On the Merits

This action was previously before me on the plaintiff's motion for summary judgment. At that time I ordered that the motion be denied, with leave to the plaintiff either to take judgment in an amount less than that sought in the complaint or to request a trial on the single issue of notice. It was my conclusion then expressed that the plaintiff would have been entitled to judgment for the full amount sought, except that it failed to establish that the defendant had had sufficient notice of the issuance of certain O.P.A. price orders on which the plaintiff's right of action depended.

Under the contracts between the parties, as I interpreted them in deciding the motion for summary judgment, the price for alcohol purchased by the Government from the defendant was to be the ceiling price for the alcohol as established by the O.P.A. On October 25, 1946 the O.P.A. issued a series of amendatory price orders reducing the ceiling prices previously in effect for the defendant's alcohol. There is no serious dispute as to the fact that the O.P.A. had the authority to issue such orders. However, on the record before me on the motion for summary judgment there was room for a claim that the defendant had no knowledge of the issuance of the orders in time to take the appropriate steps to obtain an administrative review by the O.P.A. On that record, it was my conclusion that in entering into the contracts here involved the parties must have intended that the defendant should have an opportunity to obtain such administrative review. On July 30, 1947 Congress enacted the Supplemental Appropriations Act of 1948 which provided in part that protests of price regulations or orders might not be filed later than one hundred and twenty days after the issuance of the regulation or order, or sixty days after the enactment of the Supplemental Appropriation Act, whichever was later. Public Law 271 of July 30, 1947, c. 361, 61 Stat. 619. Since on July 30, 1947 more than one hundred and twenty days had already elapsed since the issuance of the O.P.A. orders of October 25, 1946, it appeared a necessary conclusion that, if the defendant had not known of the issuance of the orders till later than sixty days after July 30, 1947, it would have lost its opportunity to make full use of its administrative remedies. And since there was nothing in the record on summary judgment to establish that it *had* received notice within that time, I denied the motion but limited the trial to the issue of the defendant's knowledge as to the orders of October 25, 1946.

Trial has now been had on the issue thus left open. At the trial the plaintiff established, through a stipulation signed by defendant's attorneys, that at some time within a month after the issuance of the orders of October 25, 1946, the defendant had received a letter from it stating that the orders in question had been issued and asking that the defendant make the necessary refunds. The letter listed each of the amendatory orders and set out the ceiling prices established thereby. In reliance on my memorandum on summary judgment, however, the plaintiff did not attempt to prove that the defendant had ever received any copies of the orders themselves.

488

The defendant contends that only actual notification by the O.P.A. would have been sufficient to satisfy the requirement of the contracts. In support of this contention it offered the testimony of its president to the effect that nothing short of a communication from the O.P.A. would have served its needs. However, on summary judgment I held that "there is no basis in the law or the facts for defendant's contention that the contracts should be interpreted to mean that the price ceiling, referred to therein as constituting the purchase price, was subject to change only upon some particular form of notice to the defendant manufacturer of the amendatory order." I find nothing in the present record which would lead me to deviate from that conclusion.

When the defendant received the plaintiff's letter of October 28, 1946, the period for filing protests and for administrative review had not been cut off by the Supplemental Act of 1948. Consequently, the defendant received everything its bargain called for and the plaintiff is entitled to judgment for the full amount sought in the complaint.