The Brooklyn Public Library, Appellant, *v.* The City
of New York, Respondent.

(Argued March 25, 1929; decided April 16, 1929.)

*Meier Steinbrink* and *Harold M. Kennedy* for appellant. Plaintiff was entitled to recover in an action based on contract the amounts which the defendant was liable to pay under its agreement. (*Hunt* v. *City of Utica,* 18 N. Y. 442; *People ex rel. O'Loughlin* v. *Prendergast,* 219 N. Y. 377; *Davidson* v. *Village of White Plains,* 121 App. Div. 287; *Dannat* v. *Mayor,* 66 N. Y. 585; *Swift* v. *Mayor,* 83 N. Y. 528; *Reilly* v. *City of Albany,* 112 N. Y. 30; *Cumming* v. *City of Brooklyn,* 11 Paige, 596.) There can be no claim of waiver, acquiescence or "practical construction" in this case. (*Giles* v. *Comstock,* 4 N. Y. 270; *Kinny* v. *McBride,* 88 App. Div. 92; *Maloney* v. *Iroquois Brewing Co.,* 63 App. Div. 454; *Sharp* v. *Behr,* 117 Fed. Rep. 864; *Russell* v. *Young,* 94 Fed. Rep. 45; *Marshall* v. *Modern American Fraternal Order,* 184 Ill. App. 224.) The defendant breached its contract by its failure to pay mortgage interest and insurance charges. (*Dodge* v. *Cornelius,* 168 N. Y. 242; *Matter of Brooklyn Public Library* v. *Craig,* 201 App. Div. 722.)

*George P. Nicholson, Corporation Counsel* (*Elliot S. Benedict* and *J. Joseph Lilly* of counsel), for respondent. Failure to pay mortgage interest and insurance premiums

on a building which annually produced for the plaintiff rents in excess of such charges, did not constitute a breach of the contract between the city and the library. (*Schoonmaker* v. *Hoyt*, 148 N. Y. 425; *People ex rel. R. T. S. Const. Co.* v. *Craven*, 210 N. Y. 443; *Hunt* v. *City of Utica*, 18 N. Y. 442; *Donovan* v. *City of New York*, 33 N. Y. 291; *McDonald* v. *Mayor, etc.*, 68 N. Y. 23; *Smith* v. *City of Newburg*, 77 N. Y. 130; *Keane* v. *City of New York*, 88 App. Div. 542; *Village of Ft. Edward* v. *Fish*, 156 N. Y. 363; *Ontario Knitting Co.* v. *State of New York*, 205 N. Y. 409; *Matter of Zittel* v. *Furmann*, 101 Misc. Rep. 109; 183 App. Div. 448; *Matter of Hirshfield* v. *Cook*, 227 N. Y. 297; *Matter of Emerson* v. *Buck*, 230 N. Y. 380.) There has been a practical construction of this contract by the parties hereto in a manner contrary to the claims set forth in the complaint. (*City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Carthage T. P. Mills* v. *Village of Carthage*, 200 N. Y. 1; *City of New York* v. *Union Railway Co.*, 206 App. Div. 472; 238 N. Y. 571.)

Hubbs, J. Prior to 1901 Andrew Carnegie offered to give to the city of New York $5,000,000 for the purpose of erecting branch circulating public libraries upon condition that the city should furnish the sites. As a result of that offer, chapter 580 of the Laws of 1901 was enacted. It authorized the city, through its Board of Estimate and Apportionment, to enter into contracts with Mr. Carnegie or his representatives for the building and maintenance of new libraries and for the maintenance of existing libraries. There existed in the borough of Brooklyn two library corporations, the " Brooklyn Library " and the " Public Library," which it was deemed expedient to consolidate under one management. In pursuance of such purpose, chapter 606 of the Laws of 1902 was enacted, and amended by chapter 500 of the Laws

of 1903. The statute incorporated the " Brooklyn Public Library " which corporation took over the property of the other two libraries, and the direction and control thereof. It was authorized to make contracts with the city for the construction and maintenance of public libraries, and the city was empowered to contract with the Brooklyn Public Library for the maintenance of the free public library system in the borough of Brooklyn. The expense of maintenance, by the statute, was made a city charge to be included in the annual budget and tax levy of the city. Acting under the authority conferred by said statute, the city and the Brooklyn Public Library entered into the contract which is the basis of this action. It was dated June 5, 1903. It recites that it was entered into for the purpose of making the library property of the Brooklyn Library, a private corporation, a part of the free public library system of the city of New York, and that for such purpose the Brooklyn Library, a private corporation, would transfer to the new corporation, Brooklyn Public Library, its library property upon certain conditions. The property so to be transferred by the Brooklyn Library was estimated to be worth $850,000. It also recites that the Brooklyn Library would transfer certain real property adjacent to its main library building, and used in connection with it. At the time there were mortgages amounting to $120,000 upon one parcel, which property was at the time in part rented to tenants and the contract so states. By said contract the Brooklyn Public Library agreed to administer all free public libraries in the borough of Brooklyn, including the Brooklyn Library so acquired. The city agreed " that, in addition to the amount it is obligated to pay and appropriate under the agreement of September 11, 1901, above referred to, and pursuant to the provisions of the act, Chapter 580, Laws of 1901, it will appropriate and pay for the maintenance and support of said Brooklyn Public Library such sums as may be requisite for the

proper maintenance of the libraries theretofore under the administration of the Board of Directors of the Brooklyn Public Library, and of the corporation ' Brooklyn Library' above mentioned, such amounts to constitute a city charge, and to be provided for in the annual budget and tax levy of the City."

The contract also provides: " It is understood that any taxes and assessments upon any of the property of said Brooklyn Public Library, insurance charges, interest upon mortgages above recited and reasonable cost of repairs are to be regarded as part of the cost of maintenance and of the said free library system."

It thus appears that the city in and by said contract agreed to pay for the maintenance and support of the Brooklyn Public Library such sums as might be *requisite* for the proper maintenance of the libraries, and that the interest on said $120,000 mortgages and the cost of insurance on buildings should be deemed part of the cost of maintenance.

It is conceded that the city has never paid the interest on the mortgages or the cost of insurance. It is also conceded that the Brooklyn Public Library has received sufficient rent from that part of the building which has been rented to fully pay said interest and the cost of insurance.

The status of the plaintiff has been held to be " a distinct and separate corporation, receiving budgetary contributions from the city." (*Matter of Brooklyn Public Library* v. *Craig*, 201 App. Div. 722; motion for permission to appeal to the Court of Appeals denied, 202 App. Div. 815.)

The purpose of the contract was as stated therein: " To make its [Brooklyn Library] library property a part of the free public library system of the Borough of Brooklyn and of the City of New York."

The whole tenor and spirit of the contract is to the effect that the new corporation, Brooklyn Public Library,

is to hold in trust the property of the old Public Library and Brooklyn Library for the purpose of carrying out the contract between the city and Andrew Carnegie, and for the purpose of making the property a part of the free public library system of the city of New York.

The Brooklyn Public Library became an instrumentality for the carrying out of the plan for building up and maintaining that system. It was an integral part thereof. The provision of the contract providing for maintenance must be construed, with that situation in mind. The city had the obligation of maintaining its own libraries, the title to which rested in the city. It assumed the same obligation toward the libraries, the title to which was vested in Brooklyn Public Library, but because of the peculiar facts and situation resulting from the contract, by which the title of the property in question vested in the Brooklyn Public Library, although the beneficial use of the same became a part of the free public library system entitled to the financial support of the city, it was doubtless thought expedient or necessary to provide that the city " will appropriate and pay for the maintenance and support of said Brooklyn Public Library such sums as may be requisite for the purpose of the maintenance of the libraries," and that the interest on the mortgage and cost of insurance should be deemed a part of the cost of maintenance.

It was the duty and obligation of the Brooklyn Public Library to maintain itself as far as reasonable from its own income from rent, and there was no duty or obligation on the city to maintain it until it became necessary, that is, until it could not wholly maintain itself. The word *requisite* must have been used advisedly with the intent of limiting the city's obligation to such sums as should be found necessary or indispensable, otherwise the agreement to maintain would have been absolute. It does not seem reasonable that the city intended to pay the entire cost of maintenance and permit the Brooklyn

Public Library to use the rent received for the purpose of purchasing bonds, paying for a portrait and the other purposes for which it has been used. For the first eight years after the date of the contract the Brooklyn Public Library did not include in its estimates presented to the Board of Estimate and Apportionment sums to pay such interest and insurance charges. It did, however, pay the same from its " Rental fund " later called " Realty Income Account," thereby placing a practical construction upon the contract in question.

" When the parties to a contract of doubtful meaning, guided by self-interest, enforce it for a long time by a consistent and uniform course of conduct, so as to give it a practical meaning, the courts will treat it as having that meaning, even if as an original proposition they might have given it a different one." (*City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543, 548.)

The obligation of the city was to pay *each year*. The obligation of the Brooklyn Public Library was to submit *each year* an estimate of the amount requisite for the year. It would be an unauthorized construction to hold that the Brooklyn Public Library might fail for eight years to include such sums in its estimates, wait twenty years and then require the city to pay the sum of $231,307.73, the amount of the judgment awarded by the Special Term.

On the merits, therefore, under the contracts and statutes in question, the plaintiff is not entitled to recover. The conclusion which we have reached makes it unnecessary to discuss the other questions passed upon by the Appellate Division.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN and KELLOGG, JJ., concur; O'BRIEN, J., not sitting.

Judgment affirmed.