G. Robert Witmer, J.
This is an article 78 (Civ. Prac. Act) proceeding in which petitioner seeks an order annulling and vacating the appointment by the Board of Supervisors of Monroe County of Gordon A. Howe as County Manager, and for an order directing the said hoard to fill the office of County Manager.
It appears that the Monroe County Board of Supervisors, including said Gordon A. Howe, then Supervisor of the Town of Greece, were duly elected to their several ward and town offices as supervisors for the two-year term beginning January 1,1960; that on January 4, 1960, there being a vacancy in the office of County Manager, the Board of Supervisors appointed said Gordon A. Howe, one of their own members, to such office, and he thereupon resigned his office as Supervisor of the Town of Greece and qualified as Monroe County Manager.
*311 It further appears that effective January 1, 1936 the County of Monroe adopted the county manager form of government, known as Plan B of the Optional County Government Law, and it is still operating under said law; that prior to April 15, 1959 said law prohibited a member of the board of supervisors from being appointed to the office of county manager; and that effective April 15,1959, chapter 422 of the Laws of 1959 was enacted into law, amending section 1006 of the Optional County Government Law by expressly providing that “Any member of the board of supervisors shall, during the term for which elected, be eligible for appointment as county manager.3 3 The provision that the county manager shall devote his entire time to his work as administrative head of the county was continued.
Subsequently and on January 14, 1960 said Gordon A. Howe was also elected as chairman of the Monroe County Republican Committee, by the executive committee of said party; he accepted the position, and since then has acted as County Manager and as chairman of the Monroe County Republican Committee. It is said that as such county chairman Mr. Howe receives no compensation and has no specified time for performing the duties thereof.
Section 1006 of the Optional County Government Law makes provision for the removal of a county manager, as follows: 1‘ The county manager shall be removable by the board of supervisors, (1) because he was at the time of his appointment or has since become ineligible to hold such office as herein provided, (2) for malfeasance or nonfeasance in office, (3) upon conviction of a crime or of a misdemeanor involving moral turpitude, (4) for failure to perform his duties as provided in this act in an honorable, competent and reasonably efficient manner or (5) if he becomes morally, physically or mentally unfit to act in behalf of the county, but if he is to be removed he shall be given, upon demand, a written statement of the reasons alleged for the proposed removal and shall have the right to a hearing thereon at a public meeting of the board of supervisors prior to the date on which his removal is to take effect.3 3
Certain opposition to one man holding both positions was expressed in the Rochester newspapers, which also reported that petitioner was planning to institute this proceeding. Respondents concede that on the day petitioner verified his petition herein, they adopted a resolution (No. 33, on Feb. 1, 1960) entitled, “Recognizing the Compatibility of Public Service and Political Activity of Gordon A. Howe, County Manager 33, in which it was resolved in parts
*312 ‘ ‘ Section 1. That in the opinion of this Board of Supervisors there has been no demonstrated incompatibility in service both to the public and a political party, and
“ Section 2. That criticism of Gordon A. Howe for serving as County Chairman of his party and County Manager is unwarranted in the absence of evidence of such incompatibility.”
Petitioner has not petitioned the Monroe County Board of Supervisors to act under the above-quoted provision in the statute for the removal of the county manager. He contends that in view of said resolution of the board, it would be a futile gesture for him to request the board to remove the county manager.
Petitioner asks the court to hold (1) that the appointment of Mr. Howe, then a member of the Board of Supervisors, to the position of County Manager, made pursuant to the statute as amended, was void because the statute is against public policy; (2) that the position of chairman of the Monroe County Republican Committee is incompatible with the office of County Manager, and that by his acceptance of the chairmanship of the Monroe County Republican Committee Mr. Howe vacated the office of County Manager; and (3) that in any event the position of party chairman, in its very nature, is so repugnant to the conduct of the office of County Manager as to render Mr. Howe ‘1 morally unfit ” to continue to serve as County Manager.
Petitioner’s position with respect to his contention that the original appointment of Mr. Howe as County Manager was void because the enabling amendment to the statute is against public policy, is difficult for the court to understand. Repeatedly upon the argument and in his briefs he has said that he does not question the law’s constitutionality. In his last supplementary brief, in letter form dated April 1,1960, petitioner states: “ The remainder of the substantive portion of Respondents’ brief deals with the question of constitutionality. At no time has the Petitioner raised the question of constitutionality in this matter. Any reference by the Respondents, either in argument or in their brief, to the question of constitutionality is totally irrelevant and immaterial to the issues presented in this matter. ’ ’
Since petitioner does not question the constitutionality of the statute, it is not necessary or appropriate for this court to explore that aspect of the case. Suffice it to note the observation of Mr. Justice Holmes that “ legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.” (Missouri, Kansas & Texas Ry. Co. v. May, 194 U. S. 267, 270.) Conceding the constitutionality of *313 this statute clearly disposes of the claim that the law is against public policy, for the public policy of the State is to be found in our Constitution and statutes. (People v. Kupprat, 6 N Y 2d 88; Farrington v. Pinckney, 1 N Y 2d 74, 82; Mertz v. Mertz, 271 N. Y. 466, 472; Melodies v. La Pierre, 4 A D 2d 982.) The amendment of the statute made by chapter 422 of the Laws of 1959 had been before the Legislature in several previous years, and it was enacted after full consideration of the status of the law of this State at the time. It represents the present public policy of the State, and the board’s appointment in accordance therewith was lawful.
It thus remains to consider whether the later acceptance by Mr. Howe of the position of chairmanship of the Monroe County Republican Committee affects his status as County Manager.
It is the law that a person may not hold two incompatible public offices at the same time, and the acceptance of such an office by the incumbent of another such office, automatically vacates the first office. (See Matter of Burns v. Wiltse, 303 N. Y. 319; and People ex rel. Ryan v. Green, 58 N. Y. 295, 304-305.) We must determine, then, whether the position of chairman of the Monroe County Republican Committee is a public office and incompatible in law with the office of County Manager.
A public officer is defined in section 2 of article 1 of the Public Officers Law, wherein public officers are classified into two groups, to wit, State officers and local officers. It is provided in part “ The term ‘ local officer ’ includes every other officer who is elected by the electors of a portion only of the state, every officer of a political subdivision or municipal corporation of the state, and every officer limited in the execution of his official functions to a portion only of the state.”
In section 2 of article 1 of the Election Law, entitled ‘ ‘ Definitions ”, it is provided in subdivision 8, “ The term ‘ party position ’ means membership in a party committee or the position of delegate or alternate to party convention.”
It is apparent from the foregoing and from other provisions of the Public Officers Law (see especially, art. 2 with reference to qualifications, terms, oaths and undertakings) and of the Election Law (art. 2, making entirely separate provisions for designation and election to party positions in party primaries from provisions for nomination and election to public office in public elections) that the position of chairman of a political party is not a public office. (See, also, People ex rel. Sherwood v. Board of Canvassers, 129 N. Y. 360, 366.) It does not appear that the doctrine of incompatibility of offices has ever been applied *314 where a public officer has also accepted another position not constituting a public office. There is no occasion in this case, therefore, for the operation of the above-mentioned rule of law that the acceptance of a second public office renders the first office vacant. That does not mean, of course, that a public official may not be removed in accordance with law if he assumes an additional position which is found to conflict with his public office to such an extent as to render it improper for him to act in both capacities.
Petitioner asserts that since the function of a party chairman is to foster the aims of his party, as a matter of law the position is repugnant to the office of County Manager; that the holding of the position of chairman of the Monroe County Bepublican Committee renders Mr. Howe “morally unfit ” to continue as County Manager; and that the court should remove him summarily.
The difficulty with petitioner’s position in this respect is that he asks the court to take judicial notice of the repugnancy of the two positions and to remove the county manager without receiving evidence concerning the operation of the respective positions and without giving respondents or the county manager an opportunity to be heard on the facts. This court may not take arbitrary action not based upon facts fairly determined and with full jurisdiction over the interested persons. To do so would be contrary to fundamental principles of law and contrary to due process of law.
Questions of fact as well as of public policy exist as to whether the position of chairman of the county committee of a political party is incompatible with the office of county manager, and whether holding the position of such chairman renders a person “ morally unfit ” to be county manager. It is noted that the Legislature did not see fit to make any limitation as to who could hold the office of county manager. It made express provision for the disqualification and removal of a county manager. Upon a question of removal, it provided in section 1006 of the Optional County Government Law that in the first instance the board of supervisors may hear and weigh the facts, and determine whether to remove the county manager.
The chairmen of the two principal political parties in Monroe County have authority to recommend to the Board of Supervisors their respective choices (one each) for membership on the County Board of Elections (Election Law, §§ 30, 31), and the County Board of Elections appoint election officers on the recommendations of such county chairmen (Election Law, § 50). The *315 County Manager has nothing directly to do with these matters. There would seem to be no incompatibility therein.
It is provided in section 1006 of the Optional County Government Law that u Neither the board of supervisors nor any of its committees or members shall direct or request the appointment of any person to, or his removal from, an office or position by the county manager or any of the officials under his jurisdiction, or in any manner take part in the appointment or removal of officers or employees in the administrative service of the county who are subject to the jurisdiction of the county manager.” It is known that some supervisors are also town or ward Republican leaders of their respective towns and wards. To say that a supervisor as such may not talk to the county manager as such, but as town or ward leader he may talk to the county manager in the latter’s separate capacity as chairman of the County Committee would be inconsistent and even ludicrous* bringing to mind the famous spoofing of public officials found in the Gilbert and Sullivan operas. It is clear, however, that the statute does not ban all conversation between a supervisor and the county manager, but merely forbids efforts to induce the county manager or his officials to appoint or remove an employee. It is a question of fact whether a supervisor who is also a town or ward leader may properly perform his duties without violating the injunction of the Optional County Government Law against influencing the county manager concerning the appointment or removal of employees. If a conflict should appear therein, it may be that the practical solution would be for the supervisor to cease to be a leader.
In this same regard it is a question of fact whether the County Manager who is also chairman of the Monroe County Republican Committee can obey the spirit of said provisions of the Optional County Government Law. Nothing in the statute says that he cannot. These and like questions of fact may not be determined by the court without inquiry in a proper case.
The law provides orderly methods of determining such questions, without asking the court to act arbitrarily and unjudicially. As above noted, section 1006 of the Optional County Government Law expressly provides for a hearing on the question of the unfitness of the county manager. A matter of public policy being at issue, the people at the polls hold a decisive control in the matter. In such situations the courts are slow to interfere with the acts of duly elected public officials.
It is a principle of law in construction matters that the practical construction of and acts under an instrument of doubtful meaning, adopted and followed by the parties over a period of *316 years, will be accepted by the courts as evidence of the intention of the parties. (City of New York v. New York Gent. R. R. Co., 193 N. Y. 543, 548-549; Brooklyn Public Lib. v. City of New York, 250 N. Y. 495, 501; Matter of Erwin, 277 App. Div. 378, 384; Jacobowitz v. Mutual Health Assn., 10 A D 2d 159, 162-163.) Nationally and locally in American politics it seems to have been the accepted practice that a political leader might also hold important political office. From the office of Postmaster General of the United States, frequently if not generally held by the chairman of the national political party of the President, down to the supervisors of towns and wards, who as above noted are often the political leaders thereof, the practice has been adopted and recognized. The court is informed that in some instances county managers have been county chairmen of their respective political parties in the New York metropolitan area. The above observations are made by the court not in an attempt to place a stamp of approval upon the situation herein attacked. Beference is made to such general practice merely to point out that it cannot be said to be malum in se without reference to the particular facts of a particular case. Certainly it cannot be said that there has been a public condemnation of the practice; but, if anything, the contrary would seem to be the case.
It is argued that the court must be ‘1 practical ’ ’ and recognize politics as they are. That is true. The court must be aware of practical politics, but its decisions must be judicial, not political. .Epithets and common political talk or even public belief may not take the place of facts. It may as well be argued that since the board of supervisors are practical politicians, they will not appoint as county manager a man who is not a loyal partisan, so that he will in any event find ways of knowing what the enjoined supervisors wish and will be subject to the political wishes of the county chairman, and that thus it makes little difference whether the county manager is also the county political chairman.
It is often said that the way to bring about and maintain good government is for all citizens to take an active part in their government. An important step in that direction in a government based largely upon the two-party system is for a citizen to be active in the political party of his choice. The highest form of activity in a political party may well be said to be active fnembership on its committee. Can it be said by the court as a matter of common law that one who thus serves his party and community is thereby barred from serving as county manager? I think not. But clearly the people, acting through their elected *317 officials in the board of supervisors and in the State Legislature, may so declare. Since the people have not as yet made such declaration, this court may not do so as a matter of law, arbitrarily and without factual proof to support such determination. The petition is therefore denied. Submit order accordingly.