**ANHEUSER–BUSCH, INCORPORATED, Plaintiff,**

v.

**ELSMERE MUSIC, INC. and Steve Karmen, Defendants.**

**No. 85 Civ. 8494.**

United States District Court, S.D. New York.

April 17, 1986.

Skadden, Arps, Slate, Meagher & Flom, New York City; Kenneth A. Plevan, of counsel; Abeles Clark & Osterberg, New York City, for plaintiff; Robert T. Osterberg, of counsel.

Hawkins, Delafield & Wood, New York City, for defendants; Philip R. Forlenza, Terence J. Hines, Michael L. Ward, of counsel.

LUMBARD, Circuit Judge:*

The lyric "For All You Do, This Bud's For You" and the accompanying music is a familiar refrain to the American public through myriad Budweiser beer television and radio commercials. Steve Karmen, a renowned jingle-writer, composed the original Budweiser music, for different lyrics, in 1970 and, later that year, Karmen's corporation, Elsmere Music, Inc. ("Elsmere") entered into an agreement with Anheuser-Busch's advertising agency, D'Arcy, Masius Benton & Bowles, Inc. ("D'Arcy") licensing the use of the Karmen jingle in Budweiser advertising. The agreement contains a lucrative residuals clause, unprecedented at the time of the contract's execution, which entitles Elsmere to compensation whenever Anheuser and D'Arcy use "arrangements" of Karmen's music in Budweiser commercials.

Anheuser paid Elsmere over two million dollars[1] under this clause, but stopped payments in late 1985 when it began airing a new jingle written by another composer. When Karmen demanded residuals based on alleged similarities between the new jingle and his work, Anheuser commenced this action for a declaratory judgment that its new Budweiser jingle is not an "arrangement" of the Karmen jingle and that therefore Karmen is not entitled to residuals for the new jingle's use. Karmen and Elsmere counterclaim against Anheuser and D'Arcy for a declaratory judgment that Elsmere is entitled to residuals under the 1970 Agreement and, alternatively, for damages from Anheuser on a quasi-contractual theory of unjust enrichment.[2] For

---

* Sitting by designation.

**1.** The figures below represent Karmen's yearly income from the use of his jingle in Budweiser advertising. Income during the period 1970–1978 includes residuals and flat fees paid to Karmen for composing arrangements of his original jingle. After 1978, Karmen no longer did any arranging and these income figures are solely attributable to residuals under Paragraph 6 of the 1970 Agreement.

| | | | |
|---|---|---|---|
| 1970 | $ 272.00 | 1978 | $105,427.55 |
| 1971 | $ 23,585.85 | 1979 | $285,480.11 |
| 1972 | $ 61,000.50 | 1980 | $179,418.20 |
| 1973 | $ 54,433.80 | 1981 | $220,875.59 |
| 1974 | $ 66,247.67 | 1982 | $323,764.39 |
| 1975 | $ 44,257.67 | 1983 | $470,234.14 |
| 1976 | $ 76,511.05 | 1984 | $422,244.09 |
| 1977 | $154,996.91 | | |

**2.** Elsmere and Karmen had also asserted counterclaims against Anheuser seeking declaratory relief and money damages for copyright in-

reasons which follow, the court grants a declaratory judgment for Anheuser.

Subject matter jurisdiction is based on diversity of citizenship. Anheuser is a Missouri corporation with St. Louis as its principal place of business and Steve Karmen, a citizen of New York, is the sole shareholder of Elsmere Music, a New York corporation with New York as its principal place of business. Subject matter jurisdiction over defendants' counterclaim against Anheuser and D'Arcy is based on ancillary jurisdiction. Although the record fails to show D'Arcy's principal place of business for diversity purposes, the court has ancillary jurisdiction over such "compulsory" counterclaims which extends to parties, such as D'Arcy, who meet the joinder requirements of Fed.R.Civ.P. 19 or 20. *See* Fed.R.Civ.P. 13(h); *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1070–71 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Declaratory relief is appropriate because it will terminate an actual controversy among the parties. *See* Fed.R.Civ.P. 57; 28 U.S.C. § 2201 (1982).

In early 1970 D'Arcy solicited a number of music houses to compose music and lyrics for a Budweiser beer ad campaign. D'Arcy instructed that all submissions end with the slogan "When You Say Budweiser, You've Said It All." Steve Karmen's jingle—consisting of music and original lyrics except for the Budweiser slogan—won the competition and on September 10, 1970, Karmen obtained a copyright for his jingle entitled "Budweiser/You've Said It All" ("the Karmen jingle").[3]

On September 14, 1970, D'Arcy and Elsmere entered into a letter agreement in New York ("the 1970 Agreement") pertaining to Anheuser's use of the Karmen jingle in advertising Budweiser beer. Paragraph 6 provides that, in addition to an initial lump sum payment for Anheuser's and D'Arcy's right to use the Karmen jingle, Elsmere is entitled to compensation "for the use of arrangements of the work in radio or television, whether or not the arrangements were furnished by [Elsmere or Karmen]" (the "residuals clause").[4]

D'Arcy and Anheuser used the Karmen jingle extensively in Budweiser advertising from 1970 to 1977. Karmen composed most of the arrangements of his original Budweiser jingle during this period, approximately 100 in all. Also during this period Karmen composed jingles for use in advertising other Anheuser-Busch beers. The contracts for the use of these jingles were identical in all material respects to the 1970 Agreement.

In 1978, Anheuser and D'Arcy changed the focus of the Budweiser ad campaign and adopted the slogan "For All You Do, This Bud's For You." The new campaign, dubbed the "Worker Salute", continued to use Karmen's music, but with new lyrics, including the new slogan, not written by Karmen. D'Arcy modified the Karmen music in the transition. For example, the original copyrighted Karmen music accompanying the final "When You Say Budweiser" proceeded in an "ascending phrase" of 6 notes, numerically represented in the key of C major as 3-4-5-6-6-5, and the accompaniment for "You Said It All" proceeded in a "descending phrase" of 4 notes, 6-4-2-1. By contrast, in early Worker Salute commercials the last 2 notes (6-5) of Karmen's ascending phrase were dropped in the accompaniment for "For All You Do", the words "This Bud's For You" were spoken, after which Karmen's four note descending phrase was played instrumentally.

---

fringement and damages for unfair competition. Elsmere and Karmen voluntarily withdrew these counterclaims prior to trial.

**3.** The copyright was originally registered in the name of Karmen's corporation, Sandlee Publishing. On February 12, 1976, Sandlee assigned its rights in the Karmen jingle to Elsmere Music.

**4.** The 1970 Agreement has been expressly modified only once on March 23, 1978, to increase the lump sum paid to Elsmere under Paragraph 5 for Karmen's own arrangements of his jingle. Paragraph 6, which grants Elsmere residuals for arrangements of the original jingle, *whether or not* Karmen personally did the arranging, has never been modified.

Later in the campaign, the words "This Bud's For You" were sung with the descending phrase, but D'Arcy's creative staff modified the rhythm of these last 4 notes to accommodate the change in lyrics from "You've Said It All."

After 1978, Karmen did not compose any new versions of his original jingle and he did not compose any of the versions used in the Worker Salute campaign. However, it was D'Arcy's policy to inject portions of Karmen's original music into the new commercials in order to provide continuity between the old and new ad campaigns. During the period 1978–1985, D'Arcy produced hundreds of different versions of the Worker Salute jingle, including jazz, rhythm and blues, soul and rock, targeted at special audiences such as "contemporary adults" and Hispanics and Blacks. Elsmere continued to receive residual payments under Paragraph 6 of the 1970 Agreement for the use of portions of Karmen's music in the Worker Salute jingles.

In 1984, Anheuser and D'Arcy decided to make another change in the Budweiser advertising campaign. To this end, D'Arcy, in December, 1984, invited approximately 20 music houses, including Elsmere, to submit new jingles. D'Arcy requested that each music house compose two types of jingles. The first assignment instructed participants to combine new music with the old Budweiser (Karmen) music, specifically keeping the first few notes of Karmen's music ("the Karmen fanfare") and the final melody to accompany the slogan "For All You Do, This Bud's For You." The second assignment instructed participants to create "totally new" music and lyrics with "no ties to the past" except for the lyric "This Bud's For You." D'Arcy wanted the new melody to track against the sub-theme "You Make America Work." Each music house received from D'Arcy sheet music of the original Karmen jingle and a cassette tape of a current Budweiser commercial containing Karmen music.

Fifteen music houses submitted compositions to D'Arcy. Although Karmen had been asked to participate, he had declined.

In January, 1985, D'Arcy selected one of the compositions submitted by Tom Anthony Music under the category of "totally new" music, entitled "You Make America Work" ("the Anthony jingle"). Tom Anthony wrote the lyrics and his associate, Gavin Spencer, composed the music. Anheuser liked the Anthony jingle, but instructed D'Arcy to give Karmen another chance to compete. Karmen then submitted a new jingle which D'Arcy and Anheuser rejected.

Karmen complained to D'Arcy and Anheuser that the Anthony jingle was not "totally new", but contained a 4-note ending virtually the same as the ending in his Budweiser jingle. The last measure of the copyrighted version of Karmen's jingle contains a ¼ rest followed by a consistently descending phrase of notes: 6–4–2–1. The last measure of the copyrighted version of the Anthony jingle contains a ¼ rest followed by a consistently descending phrase of notes, 4–3–2–1, the last two notes being identical to Karmen's notes. The rhythm in which these notes are played is different in the two copyrighted versions; however, the Anthony rhythm is identical to the rhythm of post–1978 versions of the Karmen jingle as modified by D'Arcy. Aside from the similarities in the last measure, the two works are wholly dissimilar.

From January to June, 1985, Karmen spoke with Don Sager, D'Arcy vice president and manager of broadcast business affairs, repeating his position regarding the similarities between the 4-note endings and demanding that residual payments be made pursuant to Paragraph 6 of the 1970 Agreement if the Anthony jingle was broadcast. Anheuser and D'Arcy considered changing the Anthony jingle's ending to avoid any possible Karmen objections; however, they ultimately rejected alternative endings provided by Anthony and, in October, 1985, informed Karmen that they would begin broadcasting the original Anthony jingle on November 1, 1985.

One week prior to the scheduled start of the new broadcasts, Karmen's counsel in-

formed Anheuser and D'Arcy that Karmen would seek injunctive relief against the airing of the commercials if they refused to make residual payments under the 1970 Agreement. Anheuser got to the courthouse first and commenced this suit for a declaratory judgment on October 28, 1985. Karmen cross-moved for a preliminary injunction, but subsequently withdrew his motion and substituted counterclaims for declaratory and other forms of relief.

Since November 1, 1985, Anheuser and D'Arcy have broadcast commercials for Budweiser beer using the Anthony jingle on national and local radio and television. Elsmere has not been paid residuals for any uses of the Anthony jingle.

Anheuser argues that the 1970 Agreement is a "copyright license agreement" and that the term "arrangement" used in Paragraph 6 has a commonly understood meaning in this context, specifically, a derivation or adaptation of a copyrighted work which, but for the license, would constitute infringement of the copyright. Anheuser maintains that Karmen is unable to demonstrate infringement of his copyright in Anheuser's use of the Anthony jingle and that, therefore, Paragraph 6 has not been triggered.

Anheuser also submits that because the meaning of the term "arrangement" is clear and unambiguous, the court need not consider any extrinsic evidence on the question of whether Karmen and Elsmere are entitled to residuals. Alternatively, Anheuser argues that, even if the court deems it necessary to consider extrinsic evidence on this issue, the evidence relied upon by Elsmere and Karmen fails to establish that they are entitled to residuals for Anheuser's use of the Anthony jingle.

Karmen argues that the 1970 Agreement is ambiguous on the question of what constitutes an "arrangement" for which Elsmere is entitled to residuals and that resolution of this question requires examination of extrinsic evidence, such as the parties' course of performance under the 1970 Agreement and under other agreements containing identical terms. According to Karmen, this evidence demonstrates that Elsmere is entitled to residuals whenever Anheuser and D'Arcy use "identifiable variations of substantive portions" of Karmen's music in Budweiser commercials. Finally, Karmen alleges that Anheuser and D'Arcy, in using the Anthony jingle, are trading on one of the most clearly identifiable portions of his Budweiser jingle—the 4-note musical "tag" or "hook" played at the end of the jingle with the product slogan.

Anheuser's contention that "arrangement" has a clearly defined meaning in copyright license agreements is unpersuasive.[5] The term "arrangement" is not defined in the 1970 Agreement. Although it is a commonly used musical term, the musical dictionaries and encyclopedias disclose no definition that provides guidance for interpreting the term in a contract for the use of an advertising jingle. The court finds that the 1970 Agreement is ambiguous on what is meant by an "arrangement" and that this ambiguity necessitates a look at the parties' own interpretation of the agreement as evidenced by their course of conduct. *See Webster's Red Seal Publications, Inc. v. Gilberton World-Wide Publications, Inc.,* 67 A.D.2d 339, 341, 415 N.Y. S.2d 229, 230 (1st Dep't. 1979), *aff'd,* 53 N.Y.2d 643, 421 N.E.2d 118, 438 N.Y.S.2d 998 (1981).

The intended scope of Paragraph 6 is best defined by the parties' course of conduct over the 15 year period during which the Karmen jingle was used in Budweiser advertising. From 1970 to 1977, Karmen did most of the arrangements, using significant portions of his original jingle in each. During this period, Karmen never received residuals for the use of fewer than 8 notes

**5.** According to the Joint Pre-Trial Order, a residuals clause in favor of a jingle's composer was virtually unprecedented in 1970. The uniqueness of the Agreement suggests that it can only be construed in light of its own special circumstances, not with reference to decisions interpreting different license agreements. *See Roch Transport Properties Corp. v. Hartford Fire Ins. Co.,* 312 F.Supp. 341, 346 (S.D.N.Y.1970), *aff'd,* 433 F.2d 152 (2d Cir.1970).

of his jingle in Budweiser advertising. In 1978, D'Arcy launched the Worker Salute campaign using new lyrics, a new slogan, and a modified Karmen melody. Karmen did not personally arrange any of the Worker Salute series commercials; however, D'Arcy executive vice president and creative director, Charles Claggett, testified that D'Arcy had an informal policy of incorporating "identifiable portions" of Karmen's music into the new Budweiser commercials in order to achieve continuity between ad campaigns. Don Sager testified in his deposition that the use of a "substantive portion" of Karmen's original music in conjunction with the music of another composer qualified as an "arrangement" entitling Elsmere to residuals under Paragraph 6. Thus, after 1978 the parties interpreted the term "arrangement" in the residuals clause as entitling Elsmere to compensation when a "substantive" or "identifiable" portion of Karmen's music was used in a Budweiser commercial.

The Karmen music featured in the Worker Series campaign is relevant to what the parties considered to be an identifiable portion of Karmen's music, the use of which entitled Elsmere to residuals. When Anheuser and D'Arcy adopted the new lyric "For All You Do, This Bud's For You," they modified the accompanying Karmen music by leaving out the last two notes of Karmen's ascending phrase and, in some instances, changing the rhythm of the original descending phrase. This left two 4-note phrases: 3–4–5–6/6–4–2–1. These phrases, used in almost all Budweiser advertising, became the most clearly "identifi-

able" portions of Karmen's original music in the post-1978 commercials.

In the great majority of the commercials for which Elsmere received residuals, the two phrases appeared together at least once. Usually, the phrases were repeated elsewhere in the commercial, either together or individually. Gerry Mandel, D'Arcy creative director in charge of Budweiser commercials since 1982, stated that in order to make Karmen's music recognizable in new commercials, his staff sought to include Karmen's opening fanfare (3–4–5–6–6–5), the closing melody (3–4–5–6/6–4–2–1), and a restatement of this melody somewhere in the body of the commercial. Anheuser's long-term and uniform practice of paying Karmen residuals for the use of the 3–4–5–6/6–4–2–1 melody in a Budweiser commercial constitutes a practical interpretation of the term "arrangement" which defines the obligations of the parties.

The court does not believe, however, that the course of payments for the 3–4–5–6/6–4–2–1 fragment entitles Karmen to residuals for the airing of the Anthony jingle's 4–3–2–1 ending. The Anthony jingle falls short of the parties' practical interpretation of an "arrangement" as consisting of the use of 8 "identifiable" Karmen notes in a Budweiser commercial.

Karmen's evidence of a more expansive interpretation of the term "arrangement" is not persuasive. He relies on (1) the fact that he received residuals for the broadcast of 9 "contemporary adult" radio commercials in which D'Arcy used the four-note ascending and descending phrases together, separated, *alone or even varied* in commercials featuring the work of other artists,[6] and, (2) D'Arcy's alleged recognition

---

**6.** Karmen cites the residuals payments for the following Budweiser radio commercials and one Budweiser television commercial as evidence of Anheuser's alleged obligation to pay for the use of small fragments or variations of his music. The music in the commercials is different from Karmen's music with the exceptions noted below.

1. "Cub Fan Rap" (TV): 3–4–5–6/6–4–2–1 appears 2½ times.

2. "Bustin' Bud Suds: 60"; "Bud Talk: 60"; 3–4–3–5/6–4–2–1 appears at the beginning and end of the commercials. Note the variation in the ascending phrase.

3. "Soulard Blues Band: 30": Opens with 3–4–5–6 and closes with 6–4–2–1.

4. "X": Opens with 6–4–2–1 and closes with 3–4–5–6, a reversal of the usual sequence of the two phrases.

5. "Johnny Guitar Watson": Uses only the descending phrase, 6–4–2–1.

6. "Bus Boys: 60"; "Bus Boys: 30": These commercials use only the asending phrase, 3–4–5–6.

7. "Bud Talk: 30": Uses only a modified ascending phrase, 3–4–3–5.

of an obligation to pay him residuals for the use of *four notes* from his Michelob Light beer jingle in the jingle of another composer. According to Karmen, the Anthony jingle's 4–3–2–1 ending is an "identifiable variation" of his 6–4–2–1 ending, the use of which in Budweiser commercials entitles Elsmere to residuals. The court does not agree.

In the period 1978–1985, Anheuser and D'Arcy produced approximately 650 different Budweiser radio commercials, including during Mandel's tenure, 100 contemporary adult radio commercials. However, Karmen is able to cite only a few commercials for which he received residuals for the use of fewer than 8 of his notes. These few payments are insufficient evidence of a course of performance. *See Brooklyn Public Library v. City of New York,* 250 N.Y. 495, 501, 166 N.E. 179 (1929) (parties may give practical meaning to an ambiguous contract term by enforcing it "for a long time by a consistent and uniform course of conduct").

Moreover, the manner in which it was determined to make these payments suggests that the payments should not be given weight in defining Anheuser's obligations under Paragraph 6. Don Sager testified that, from 1970–1977, Anheuser and D'Arcy routinely placed Karmen on the residuals roster or "production report form" for Budweiser commercials because Karmen did all the arrangements himself and they assumed that he incorporated enough of his music into the arrangements to warrant compensation. This practice continued in the period 1978–1980 under D'Arcy's general policy of attempting to incorporate identifiable portions of Karmen's music into all Budweiser commercials.

In 1980, Mary Riggs became Budweiser broadcast business manager and took over the job of filling out the production report forms. She testified that if she had a question as to whether Elsmere was entitled to residuals for a commercial she would contact the creative staff at D'Arcy. But, as Gerry Mandel explained, D'Arcy's creative staff approved a few commercials using very little Karmen music because the commercials had a good "feel," and because the musicians were "locked in" to a particular arrangement.

■ Anheuser and D'Arcy erred on the side of generosity to Karmen by paying him for commercials using very little of his music. Whatever the reason for the generosity, the court believes that Anheuser and D'Arcy paid Karmen in these few instances without making a conscious determination that the few notes used constituted "identifiable" Karmen music. Because the payments were not thoughtfully considered according to a set standard, the court believes that they are inadequate evidence of a course of conduct. *See Portsmouth Baseball Corp. v. Frick,* 278 F.2d 395, 401 (2d Cir.1960), *cert. denied,* 364 U.S. 831, 81 S.Ct. 71, 5 L.Ed.2d 58 (1960) (applying New York law); *see also Jansen v. United States,* 344 F.2d 363, 369, 170 Ct.Cl. 346 (1965); *Deloro Smelting and Refining Co. v. United States,* 317 F.2d 382, 385–86, 161 Ct.Cl. 489 (1963).

Karmen also cites the payment of residuals under the parties' Michelob Light agreement as evidence of a course of conduct. In 1978, D'Arcy and Elsmere entered into an agreement for the use of Karmen's jingle "Good Taste Runs in the Family" in advertising Michelob Light beer. The 1978 Agreement is identical to the 1970 Agreement in all material respects.

In 1980, Anheuser and D'Arcy replaced the Karmen "Good Taste" jingle with the jingle of another composer; however, they kept the first 9 Karmen notes, a five-note

---

8. "Suggah: 30": Uses only a modified ascending phrase, 3–4–5 flat-5.

The court finds that only two commercials ("Bud Talk: 30" and "Suggah: 30") are relevant to the present controversy over the Anthony jingle as evidence of payment for "identifiable

variations" of a single four-note Karmen phrase. The other 8 commercials use either more than four Karmen notes or use the exact same four notes, thus presenting a stronger (though hardly compelling) case for residuals than does the use of the Anthony ending.

fanfare and the first four-note phrase, played in Karmen's rhythm. When Karmen heard the new Michelob Light commercials he complained to Don Sager that his *four-note* phrase was being used and he demanded residuals under the 1978 Agreement. This set off a flurry of memoranda among Sager and other people at D'Arcy. On September 9, 1980, Sager advised Talmage Newton of Karmen's claim. His memo mentions the use of 4 Karmen notes; evidently, Sager was unaware that 9 notes had in fact been carried over. Sager suggested, "Because we repeated these notes by design and because he's [Karmen] got nothing to lose by suing us ... I suggest that we consider adding Elsmere Music to the doles." Newton replied that he was "strongly opposed" to paying Karmen, but that after careful investigation and obtaining legal advice, he concluded that Karmen was entitled to residuals if the notes used in the new commercials were the same as or similar to Karmen's, and they were used by design.

■ Karmen argues that the Michelob Light memos are important evidence of the parties' own understanding of the payment obligations under the residuals provision of D'Arcy-Elsmere agreements. The court does not agree. Anheuser agreed to pay Karmen only after he had threatened litigation. Indeed, Sager's first memo suggested adding Elsmere to the "doles" for the nuisance value of avoiding a Karmen lawsuit. Newton, on the other hand, believed that the contract entitled Karmen to residuals for the intentional use of his notes in the new commercials. This difference of opinion is further indication that the parties had no established criteria for interpreting residuals provisions.

The new Michelob Light commercials incorporated 9, not 4, Karmen notes. It is true that Sager and Newton originally believed that the dispute concerned only four notes; but, even so, the case for residuals was stronger under their mistaken belief than in the present instance. All four notes at issue in the Michelob Light controversy were identical to Karmen's notes and

were played in the same rhythm. By contrast, only two of Karmen's notes (2–1) appear in the Anthony ending and the Anthony and original Karmen music employ different rhythms. In addition, it is clear that D'Arcy incorporated Karmen's music into the new Michelob Light jingle *by design* to lend continuity to the transition. The evidence indicates that any similarities between the endings of the Anthony and Karmen jingles are the product of musical commonplaces in jingle-writing, not intentional borrowing.

Anheuser's expert witness, Dr. Earl Spielman, testified that a consistently descending phrase of notes ending in 2–1 is a common musical conclusion because the descent and eventual return to the octave's "tonic" (*i.e.* the 1 note) gives the listener a sense of finality. Of course, fewer compositions end with a $\frac{1}{4}$ rest and a descending phrase all in the same measure, as the Karmen and Anthony jingles do; however, even this ending is common. Originality in advertising jingles is severely restricted by the inherent nature of the art form. *See Darrell v. Joe Morris Music Co.*, 113 F.2d 80, 80 (2d Cir.1940). In fact, Tom Anthony Music used a $\frac{1}{4}$ rest–4–3–2–1 sequence in the last measure of a 1982 Sprite soft drink jingle. This was composed before Anthony Music had any dealings with D'Arcy relating to Budweiser advertising. *Cf. Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 986 (S.D.N.Y.1980) (accused infringer's prior use of allegedly copied material is evidence of independent creation).

That the rhythm of the Anthony jingle's last measure is the same as the rhythm of the last measure of some Worker Salute jingles does not support Karmen's claim for residuals. First, the identity in rhythm is in part attributable to the natural cadence of the lyric "This Bud's For You," which was not written by Karmen. More important, Karmen did not compose the rhythm allegedly copied in the Anthony jingle. D'Arcy's staff had modified Karmen's original rhythm to accommodate the change in lyrics in the Worker Salute com-

mercials from "You've Said It All" to "This Bud's For You." Because the 1970 Agreement states that Karmen is entitled to residuals only for "arrangements" of *his work*, he has no valid claim for Anthony Music's alleged use of his rhythm *as modified by D'Arcy.*

In sum, the course of performance evidence does not support the claim that Elsmere is entitled to residuals for Anheuser's use of the Anthony jingle's ending. The payment of residuals in the cited "contemporary adult" radio commercials and in the Michelob Light dispute is insufficient evidence of what constitutes an "arrangement" under Paragraph 6 of the 1970 Agreement. In any event, the alleged course of conduct in the above instances does not support Karmen's claim that Anheuser is obligated to pay residuals for the use of the Anthony jingle. Rather, the evidence seems to indicate that Anheuser erred on the side of generosity to Karmen by paying him residuals for a few commercials that used very little of his music. These payments should not be held to obligate Anheuser to continue payments to Karmen under Paragraph 6 now that it has radically changed its advertising campaign by adopting the Anthony jingle which, with the exception of a somewhat similar last measure of 4 notes, is completely different from Karmen's jingle.

The equitable counterclaim for unjust enrichment also fails. To prevail on such a claim, Karmen must show that he has conferred a benefit on Anheuser and that, as between the parties, it would be unjust for Anheuser to retain and enjoy those benefits without compensating Karmen. *See Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 263 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). Karmen alleges that because the Anthony and Karmen endings are "virtually indistinguishable" to the ordinary consumer, Anheuser is achieving desirable continuity between advertising campaigns without compensating Karmen for his original effort.

Insofar as the ordinary consumer might hear the endings and believe them to be similar, this impression is chiefly attributable to the accompanying lyric "This Bud's For You" and the brassy, bold instrumentation usually used in beer advertising. Karmen has no contractual or equitable interest in the lyric or the overall "feel" of the ending. In fact, the lyric is Anheuser's registered trademark. There is no basis for the claim that Anheuser has been unjustly enriched by its use of the Anthony jingle.

The court finds that the Anthony jingle is not an "arrangement" of Karmen's jingle and that, therefore, Anheuser and D'Arcy are not obligated to compensate Karmen or Elsmere under Paragraph 6 of the 1970 Agreement for their use of the Anthony jingle. The counterclaims of Karmen and Elsmere are dismissed.

This opinion constitutes the findings of fact and conclusions of law required by Fed.R.Civ.P. 52.