OPINION OF THE COURT
Arthur M. Schack J.
This case addresses whether defendant the Brooklyn Public Library (BPL) is a “municipal corporation” and, if it is, whether *311 a plaintiff is obligated to serve a notice of claim, pursuant to General Municipal Law §§ 50-e and 50-i, upon BPL as a condition precedent to commencing a tort action against BPL. The court finds it is clear that BPL is not a “municipal corporation” and a plaintiff does not have to file a notice of claim, pursuant to General Municipal Law §§ 50-e and 50-i, to commence a tort action against BPL.
The instant action resulted from a March 27, 2009 motor vehicle accident near the intersection of Flatbush Avenue and Plaza Street East, Brooklyn, New York. Defendant David Whit-taker, operating a van owned by defendant BPL, allegedly collided with a vehicle operated by defendant W. Copeland-White and owned by defendant Adult Retardates Center, Inc. (ARCI). Plaintiff David Rodriguez was a passenger in the vehicle operated by defendant Copeland-White and owned by defendant ARCI.
Several weeks later, on April 20, 2009, plaintiff’s counsel sent correspondence to defendant BPL’s insurance carrier, One Beacon Insurance. Almost one year later, on March 29, 2010, plaintiff commenced the instant action by filing the summons and complaint with the Kings County Clerk’s Office, seeking recovery for personal injuries allegedly sustained as a result of the March 27, 2009 motor vehicle accident. Plaintiff Rodriguez claimed that defendant Whittaker was acting within the scope of his employment when the vehicle he was operating came into contact with the vehicle operated by Copeland-White. Defendants BPL and Whittaker joined issue by serving their verified answer, dated April 23, 2010. The original counsel for defendants BPL and Whittaker never raised plaintiff’s failure to submit a notice of claim as a defense.
Sometime subsequent to the filing and serving of their answer, defendants BPL and Whittaker retained Wilson Elser Moskowitz Edelman & Dicker LLP as new counsel. Wilson Elser moved by order to show cause, on June 1, 2011, to dismiss the instant action, pursuant to CPLR 3211 and General Municipal Law §§ 50-e and 50-i, alleging that plaintiff Rodriguez failed to serve a notice of claim. As will be explained, this argument is disingenuous and borders upon being frivolous, because it is completely without merit in law. Therefore, the instant order to show cause is denied.
*312 Discussion
Defendants BPL and Whittaker, in the instant order to show cause, rely upon and make extensive reference to Bovich v East Meadow Pub. Lib. (16 AD3d 11 [2d Dept 2005]). However, the status of the East Meadow Public Library is distinguishable from the status of BPL.
The Second Department, in Bovich (at 16), held that a library like the East Meadow Public Library is a “variety of a public corporation such that it is entitled to the service of a notice of claim as a condition precedent to suit.” The East Meadow Public Library was situated on real property owned by the East Meadow School District and used by the East Meadow Public Library at no charge. Further, the Court, in Bovich (at 19), noted that the East Meadow School District:
“created the library pursuant to Arts and Cultural Affairs Law §61.05 and Education Law § 255. The funding for the library is provided by the district. The district provides the building in which the library is situated at no cost to the library. Indeed, it appears that the library is completely dependent upon the district for its very existence. Under these circumstances, we hold that just as a suit against the district, a municipal corporation (General Construction Law § 66 [2]), may not be brought absent the service of a notice of claim, so too is the library a variety of municipal corporation entitled to the protection of the notice of claim requirements of General Municipal Law § 50-i.” (Emphasis added.)
Defendants aver that the status of BPL is similar to that of the East Meadow Public Library. In the June 5, 1903 agreement between BPL and the City of New York (exhibit E of order to show cause), BPL, a separate corporation, agreed with the City of New York that the City of New York would “appropriate and pay for the maintenance and support of said Brooklyn Public Library” (§ 4 of agreement) and
“[f]or the purpose of this agreement however it is understood that any taxes and assessments upon any of the property of said Brooklyn Public Library, insurance charges, interest upon above recited and reasonable costs of repairs are to be regarded as part of the cost of maintenance of said free library system” (§ 6 of agreement).
*313 Thus, defendants claim, in paragraph 10 of their affirmation in support of the order to show cause, that
“as was the case in Bovieh, where the Brooklyn Public Library is so closely tied to the City of New York, the very rationale requiring a notice of claim as a condition precedent to suit against the City of New York dictates that a notice of claim also be required as a condition precedent to suit against the Brooklyn Public Library.”
Moreover, since the instant complaint specifically alleges that defendant Whittaker was acting within the scope of his employment for BPL at the time of plaintiff Rodriguez’s accident, defendant Whittaker is also entitled to service of a notice of claim as a condition precedent to the commencement of plaintiffs action.
However, defendants BPL and Whittaker overlook that BPL’s creation is different and distinct from that of the East Meadow Public Library. Further, the relationship between the City of New York and BPL is different and distinct from that of the East Meadow School District and the East Meadow Public Library, due to the contractual relationship between the City of New York and BPL.
The Court of Appeals, in Brooklyn Pub. Lib. v City of New York (250 NY 495 [1929]), reviewed the creation of BPL and its contractual relationship with the City of New York. The Court observed that, prior to 1901, robber baron-turned philanthropist Andrew Carnegie offered more than $5,000,000 to the City of New York to erect public libraries. This offer led to the New York State Legislature enacting chapter 580 of the Laws of 1901, which authorized the City of New York, through its Board of Estimate and Apportionment, to enter into contracts with Carnegie to build new libraries and maintain existing libraries. At that time in the Borough of Brooklyn there were two library corporations: a private subscription library called the “Brooklyn Library,” and the free “Public Library.” The two were consolidated into a new corporation, “The Brooklyn Public Library,” pursuant to chapter 606 of the Laws of 1902 and amended by chapter 500 of the Laws of 1903. Acting under the authority of these statutes, BPL entered into the June 5, 1903 agreement with the City, which transferred the Brooklyn Library’s property to the new BPL and transferred mortgages of about $120,000 upon one the Brooklyn Library’s property to BPL. BPL agreed to administer all free public libraries in Brooklyn *314 and the City agreed to pay for the maintenance of BPL and its branches.
The Court of Appeals, in Brooklyn Pub. Lib. v City of New York (at 498-499), held:
“By said contract the Brooklyn Public Library agreed to administer all free public libraries in the borough of Brooklyn, including the Brooklyn Library so acquired. The city agreed ‘that, in addition to the amount it is obligated to pay and appropriate under the agreement of September 11, 1901, above referred to, and pursuant to the provisions of the act, chapter 580, Laws of 1901, it will appropriate and pay for the maintenance and support of said Brooklyn Public Library such sums as may be requisite for the proper maintenance of the libraries theretofore under the administration of the board of directors of the Brooklyn Public Library, and the corporation “Brooklyn Library” above mentioned, such amounts to constitute a city charge, and to be provided for in the annual budget and tax levy of the City.’ ” (Emphasis added.)
While the City of New York provides most of the BPL’s funding, this does not make BPL a “municipal corporation.” The Court of Appeals instructed (at 499-500), that
“[t]he status of the plaintiff has been held to be ‘a distinct and separate corporation, receiving budgetary contributions from the city.’ (Matter of Brooklyn Public Library v. Craig, 201 App. Div. 722; motion for permission to appeal to the Court of Appeals denied, 202 App. Div. 815.)
“The purpose of the contract was as stated therein: ‘To make its [Brooklyn Library] library property a part of the free public library system of the Borough of Brooklyn and of the City of New York.’
“The whole tenor and spirit of the contract is to the effect that the new corporation, Brooklyn Public Library, is to hold in trust the property of the old Public Library and Brooklyn Library for the purpose of carrying out the contract between the city and Andrew Carnegie, and for the purpose of making the property a part of the free public library system of the city of New York.” (Emphasis added.)
Further, the Appellate Division, Second Department, in Brooklyn Pub. Lib. v Craig, held (at 723), “[t]he library is not a branch *315 of the city government, but is a distinct and separate corporation, receiving budgetary contribution from the city, like other educational agencies, such as the various museums of art and of natural history and the College of the City of New York” (emphasis added; see Flawless Realty Co. v Brooklyn Pub. Lib., 48 AD2d 891 [2d Dept 1975]; La Marca v Brooklyn Pub. Lib., 256 App Div 954 [2d Dept 1939]).
Moreover, employees of the various public libraries in the City of New York are not employees of the City of New York for purposes of the Taylor Law. (Matter of New York Pub. Lib. v New York State Pub. Empl. Relations Bd., 45 AD2d 271 [1st Dept 1974].) In the above PERB case, the Court held (at 280), that “the strong financial dependence of the Library upon the city, in and of itself, does not transform the Library personnel into city employees under the Taylor Act and it does no make the city a joint employer.” Further (at 283-284), the Court instructed:
“In considering the meaning of ‘public corporation’ PERB has previously followed the definition of that term as set forth in Van Campen v. Olean Gen. Hosp. (210 App. Div. 204, 206) as follows: ‘Public corporations are the instrumentalities of the State, founded and owned by it in the public interest, supported by public funds and governed by managers deriving their authority from the State.’ (See Matter of Nassau Library System, 1 PERB 3171; Matter of North Country Library System, 1 PERB 3173.) The Library, as noted earlier, is a private, separate legal entity controlled by an independent Board of Trustees and it certainly does not come within the above definition. Nor can we conclude that the Library is any other agency or instrumentality or unit of government. In the North Country Library System case (supra) PERB noted that the Library therein was not an agency of government since its board of trustees was not appointed by any government and the Library existed separate and apart from any governmental agency. And, PERB also stated with respect to the phrase ‘instrumentality or unit of government which exercises governmental powers’ as follows: ‘Such powers are those which may be exercised only by the state (in contradistinction to proprietary powers, which are exercisable by individuals or the state) or by a lesser governmental body to which such powers have been delegated by the state. By *316 way of example, they would include the power to tax, to enact general legislation which is judicially enforceable, to take by eminent domain, and to exercise police powers.’ (North Country Library System, supra, p. 3175.)
“Neither the Library nor its trustees are possessed of such powers, but merely provide a service, which although of public interest and benefit, is not the equivalent of the exercise of governmental powers.
“We conclude that the city is neither the employer of Library personnel nor a joint employer with the Library for the purposes of the Taylor Act and further, that the Library is not a government or public employer within the meaning of the act.” (Emphasis added.)
While BPL is dependent upon the City of New York for its existence, it does not receive all of its financial support from the City of New York. The East Meadow School District, in Bovich, provided all the funding for the East Meadow Public Library. In the notes to BPL’s June 30, 2010 and 2009 financial statements, prepared by Eisner Amper LLI^ BPL’s independent auditor, it states in note A (1) that “[t]he Library receives significant support through government appropriations (primarily New York City and New York State), and its continuing operations are dependent upon such government support.” Further, it states that “[t]he Library is exempt from federal income taxes under Section 501 (c) (3) of the U.S. Internal Revenue Code and from state and local taxes under comparable laws.” The latest federal income tax form 990 available for the BPL, for fiscal 2010, prepared by EisnerAmper LLI) states on the first page that BPL is a section 501 (c) (3) corporation, with total revenues of $105,810,068 for the fiscal year ending on June 30, 2010. A “municipal corporation” would not be a tax-exempt charitable corporation. Also, according to page 14 of BPL’s 2010 annual report, the City of New York provides only 62% of BPL’s revenue and support.
Further, according to the BPL’s federal 990 income tax return for fiscal 2010, BPL’s Board of Trustees, despite ending fiscal 2010 with a $1,107,9801 deficit, approved paying $1,781,686 in total compensation to nine key employees. This is 1.68% of total revenue and 2.24% of the $79,529,880 for salaries, other compensation and employee benefits. This included total compensation of: $254,959 to Dionne Mack-Harvin, then execu *317 tive director; $228,757 to John Vitali, deputy director of business administration; $221,258 to Judith Nichols, deputy director of external affairs (a euphemism for a lobbyist); $214,858 to Mary Graham, deputy director of public service; $196,086 to Lawrence Jennings, director of human resources; $172,033 to Selvon Smith, director of information technology; $166,672 to Lay Cheng Lee, director of information technology; $164,788 to Aron Bukspan, director of major and capital giving (a professional fundraiser); and, $162,275 to Vintress Brown, director of finance. The compensation of the new president and chief executive officer, Linda E. Johnson, has yet to appear in a federal 990 income tax return available to the public. If BPL is a “municipal corporation,” why does it have a professional fundraiser, who receives more in compensation than every New York State judge, including the Chief Judge of the State of New York? These salaries are not indicative of those usually paid by a “municipal corporation.” To paraphrase Mel Brooks’ famous quote, “It’s good to be the king!” when he played King Louis XVI of France prior to the French Revolution in the 1981 film satire, History of the World: Part I, “It’s good to be operating a deficit-running non-profit, receiving 62% of its revenue from the financially challenged City of New York!”
Thus, it is clear that defendant BPL is not a “municipal corporation” and its status is very different from that of the East Meadow Public Library. BPL is wholly different from the libraries covered by Bovich and BPL not subject to the notice of claim requirements of General Municipal Law § 50-i. As noted above, the City of New York did not create BPL. While the East Meadow Public Library receives all its funding from the East Meadow School District, BPL is funded from a variety of sources and, unlike the East Meadow Public Library, does not depend exclusively upon a municipal corporation, the City of New York, for its existence.
The purpose of a notice of claim, pursuant to the General Municipal Law, is to reduce the cost of litigation to self-insured municipal corporations. The General Municipal Law’s notice of claim provision is
“the affording to local governments of the opportunity to fully investigate and, if regarded as appropriate, to settle claims without the expense and hazards of litigation (Teresta v City of New York, 304 NY 440, 443; Sweeney v City of New York, 225 NY 271, 273; Purdy v City of New York, 193 NY 521, *318 523).” (Salesian Socy. v Village of Ellenville, 41 NY2d 521, 524 [1977]; see Nasca v Town of Brookhaven, 10 AD3d 415, 416 [2d Dept 2004]; Alford v City of New York, 115 AD2d 420, 421 [1st Dept 1985]; Matter of Crespo, 123 Misc 2d 862 [Sup Ct, NY County 1984].)
It is clear that defendants’ instant order to show cause is nothing more than an attempt to deny plaintiff Rodriguez his day in court. The court finds it interesting that defendants BPL arid Whittaker did not make their disingenuous lack of a notice of claim argument until they were represented by their new counsel, Wilson Elser.
Moreover, BPL is insured by One Beacon Insurance for $1,000,000 “in combined single limit coverage” (exhibit C of affirmation in opposition). If BPL was actually an entity of the City of New York, it would not have private insurance, but would be covered under the self-insurance of the City of New York. The fact that the BPL is privately insured is further evidence that BPL is a corporation, distinct and separate from the City of New York. Thus, there is no need for plaintiff Rodriguez to have served a notice of claim upon BPL and Whittaker.
Conclusion
Accordingly, it is ordered, that the order to show cause of defendants the Brooklyn Public Library and David Whittaker, to dismiss plaintiff David Rodriguez’s complaint, pursuant to CPLR 3211 and General Municipal Law §§ 50-e and 50-i, is denied.